**Mona A. ORANGE, et al., Plaintiffs,**

v.

**COUNTY OF SUFFOLK,
et al., Defendants.**

No. CV 93–0707.

United States District Court,
E.D. New York.

June 21, 1994.

**621**

Block, Amelkin & Hamburger by Frederic Block and Lane T. Maxson, Smithtown, NY, for plaintiffs.

Robert J. Cimino, Suffolk County Atty. by Robert H. Cabble, Hauppauge, NY, for defendants County of Suffolk and Gaffney.

Pachman, Pachman, Brown & Farneti, P.C. by Howard E. Pachman, Commack, NY, for Nonparty Witness Allan Binder.

*MEMORANDUM AND ORDER*

WEXLER, District Judge.

Plaintiffs, current and/or former Suffolk County Civil Service competitive class employees with the Department of Social Services ("DSS"), bring this action pursuant to 42 U.S.C. § 1983 for damages, declaratory and injunctive relief against Defendants County of Suffolk (the "County"), Suffolk County Executive Robert J. Gaffney ("Gaffney"), and eleven current or former members of the Suffolk County Legislature, including Legislator Allan Binder ("Legislator Binder") (the eleven legislators are referred to collectively as the "Legislators"). Plaintiffs allege that the individual Defendants conspired to act and acted to wrongfully discharge or adversely affect Plaintiffs' employment with Suffolk County on the basis of Plaintiffs' political affiliation in violation of the First and Fourteenth Amendments. Plaintiffs also bring a state claim based on this Court's supplemental jurisdiction alleging violation of Section 107 of the New York State Civil Service Law.

I. *BACKGROUND*

The factual background of this litigation was recounted in a Memorandum and Order dated September 13, 1993 (the "September 13 Order") 830 F.Supp. 701. Familiarity with the September 13 Order is assumed. Briefly, Plaintiffs allege that (1) their supervisor, a registered Democrat who was appointed in April 1989 to a statutory five-year term as the Suffolk County Commissioner of Social Services (the "Commissioner"), was a

target of a Republican patronage scheme; (2) Defendants conspired to force the Commissioner's resignation by subjecting her to political and economic pressure through an unlawful reorganization of her Department, including the abolishment of Plaintiffs' positions; (3) in furtherance of this political patronage scheme, Defendants conspired to take adverse employment actions against only non-Republican Civil Service employees; (4) Defendants carried out this scheme through the adoption of budgetary Resolution No. 53–1992 (the "Resolution") by the Republican-controlled legislature; (5) the Resolution purported to "effectuate cost avoidance and/or cost savings of approximately three hundred thousand dollars during fiscal year 1992"; and (6) in actuality, the Resolution resulted in a negligible, if any, cost savings. In total, the Resolution abolished fifteen positions in the DSS. Three of those positions were vacant, three were held by Republicans, two by political independents, and the remaining seven by Democrats. Plaintiffs contend, however, that none of the three "affected" Republicans was actually adversely affected by the Resolution: two never lost their jobs, and the third was initially demoted, but then promoted by defendant Gaffney to a grade higher than she had at the time the Resolution was adopted. Conversely, all but one of the remaining nine individuals were either fired or demoted.[1]

By the September 13 Order, this Court, among other things, dismissed all claims against Gaffney and the Legislators in both their individual capacities (on the ground of absolute legislative immunity) and official capacities. This Court found that the act of voting for the Resolution by the Legislators was a purely legislative function, and therefore absolutely immune from attack in a § 1983 action. The Resolution was, at least on its face, aimed at the broad policy goals of reorganizing, streamlining and rolling back costs of the DSS by eliminating fifteen administrative positions, and replacing them with twenty new entry level positions. This Court held that Plaintiffs' claims that the Resolution did not achieve the projected savings and that political patronage was the underlying factor behind the Resolution are insufficient to deprive the Legislators of absolute legislative immunity.

Following dismissal of the Legislators, Plaintiffs commenced a deposition of Legislator Binder, now a nonparty. Legislator Binder chaired the Health and Human Services Committee of the Suffolk County Legislature (the "Committee"), which looked at matters relating to the DSS and certain other departments. Transcript of Deposition of Allan Binder ("Tr."), at 27. Anticipating disputes concerning the possible assertion of legislative privilege by Legislator Binder at the deposition, Magistrate Judge David F. Jordan, now retired, presided over the deposition. At the outset of the deposition, Legislator Binder stated that he would assert his legislative privilege, pursuant to Federal Rule of Evidence 501, to questions about his motivations and deliberations regarding the Resolution. Plaintiffs, conceding the existence of legislative privilege, stated that they intended to avoid asking Legislator Binder his "specific intention," Tr. 19–20, by which Plaintiffs apparently refer to his subjective motivations. However, Plaintiffs insisted that they be permitted to question Legislator Binder on matters such as (1) the "historical background of the legislative action that was taken"; (2) the "specific sequence of events leading up to the enactment and adoption of these particular resolutions"; (3) "departures from the normal procedural sequence" leading to the legislation; and (4) substantive departures as well, relying on the Supreme Court's opinion in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 268, 97 S.Ct. 555, 565, 50 L.Ed.2d 450 (1977). Tr. 20–21. The Magistrate Judge agreed to let the deposition go forward and to allow the questioning Plaintiffs proposed.

Nevertheless, from early in the deposition Legislator Binder asserted his legislative privilege to questions he believed concerned his legislative duties in connection with the Resolution, and refused to answer despite directions to answer from the Magistrate

---

1. Plaintiffs allege further incidents they claim demonstrate Defendants' alleged patronage scheme, the details of which need not be repeated here.

Judge. In this respect, Legislator Binder was asked (1) if he requested that the Resolution be introduced to the legislature (as stated in the Resolution); (2) if the Committee made a determination that the Resolution would result in a $300,000 cost savings (also as stated in the Resolution), and to explain the procedures, analyses or studies behind that determination; (3) to identify the source of information for the title of the Resolution; (4) to identify the source of information for the "position number" indicated in the Resolution (*i.e.*, number identifying the positions eliminated), and his role in obtaining that information; (5) to identify persons he communicated or consulted with in developing the Resolution; and (6) to identify the breakdown of the Committee in terms of Republican, Democrat, or Conservative. The parties and Legislator Binder agreed to discontinue the deposition in order for Legislator Binder to challenge the Magistrate Judge's directions to answer and for Plaintiffs to move to hold Legislator Binder in contempt for refusing to obey the Magistrate Judge's directions to answer. Thus, presently before the Court is Plaintiffs' motion to hold Legislator Binder in contempt for failing to answer the above-enumerated questions asked of him at the deposition on the ground of legislative privilege, and Legislator Binder's cross-motion challenging the Magistrate Judge's rulings concerning his assertion of legislative privilege.

## II. *DISCUSSION*

As Plaintiffs contend, the Supreme Court indicated that evidence of the historical background of challenged legislation, the specific sequence of events leading up to enactment of the legislation, and procedural or substantive departures are potentially probative of legislative purpose or motive. *See Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 267–68, 97 S.Ct. 555, 564–65, 50 L.Ed.2d 450 (1977). However, even where the plaintiff must prove invidious purpose or intent, and judi-

cial inquiry into legislative motive cannot be avoided, as in a racial discrimination cases such as *Village of Arlington Heights*, the Supreme Court has indicated that only in "some extraordinary instances [legislators] might be called to the stand at trial to testify concerning the purpose of the official action, *although even then such testimony frequently will be barred by privileged.*" *Id.* at 268, 97 S.Ct. at 565 (emphasis added).[2]

■ Notwithstanding Plaintiffs' contention that what is at issue in this case is the purpose and motive of legislators in enacting challenged legislation and, therefore, the appropriate persons to question on this issue are legislators, legislative privilege prevents compelling Legislator Binder to answer questions within the scope of his legislative privilege, which includes not only questions of Legislator Binder's subjective motivations (which Plaintiffs indicated they were not seeking) *see, e.g., South Carolina Educ. Ass'n v. Campbell*, 883 F.2d 1251, 1259–60 (4th Cir.1989), *cert. denied*, 493 U.S. 1077, 110 S.Ct. 1129, 107 L.Ed.2d 1035 (1990); *City of Las Vegas v. Foley*, 747 F.2d 1294, 1297–99 (9th Cir.1984), but of testimony concerning his deliberations and thought processes regarding the Resolution. *See, e.g., Searingtown Corp. v. Incorporated Village of North Hills*, 575 F.Supp. 1295 (E.D.N.Y.1981); *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 297–98 & n. 12 (D.Md.1992). Plaintiff has not shown any compelling justification for requiring Legislator Binder to answer questions within his legislative privilege.

In *Searingtown Corp.*, for example, the court upheld the assertion of legislative privilege by a village mayor and individual members of the village's board of trustees as to their motivation and deliberations concerning zoning legislation, which defendants' allegedly enacted to destroy the value of plaintiffs' property. In upholding the assertion of privilege, the court reasoned:

**2.** The Supreme Court even cautioned that "[p]lacing a decisionmaker on the stand is . . . 'usually to be avoided.'" *Id.*, 429 U.S. at 268 n. 18, 97 S.Ct. at 565 n. 18 (quoting *Citizens to Preserve Overton Parke, Inc. v. Volpe*, 401 U.S.

402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)). This Court is not faced with a claim that Legislator Binder may not be deposed at all, but of challenges to specific questions asked of Legislator Binder on the ground of legislative privilege.

In the case of privilege arising out of legislative immunity, ... the purpose in preventing inquiry into the motivation for legislative acts is to shield legislators from civil proceedings which disrupt and question their performance of legislative duties to enable them to devote their best efforts and full attention to the "public good."

What is at issue in this action, according to plaintiffs, is the motivation of the local legislators in rezoning plaintiffs' property. However, this is precisely the kind of activity which is protected by legislative immunity. Balanced against this doctrine of immunity is the demand by two private plaintiffs in this civil action to know why they have been denied the value they claim their land had prior to the legislative acts in question. I cannot find that this interest rises to the level of public need for the full development of relevant facts sufficient to warrant threatening the interest in protecting the legislative process mandated by the Supreme Court in [*Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) ] and [*Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979) ]. Accordingly, I must allow defendants' assertion of privilege and deny plaintiffs' motion to compel them to answer questions relating to their motivations and deliberations regarding legislation they enacted.

*Searingtown Corp.*, 575 F.Supp. at 1298–99.

Similarly, Plaintiffs interests in developing relevant facts in this litigation by compelling Legislator Binder's testimony concerning deliberations and thought processes regarding the Resolution do not outweigh the activities and interests protected by Legislator Binder's legislative immunity and legislative privilege.[3]

Plaintiffs contend that the Second Circuit's decision in *Goldberg v. Town of Rocky Hill*, 973 F.2d 70 (2d Cir.1992), requires this Court to compel Legislator Binder's testimony. This Court disagrees. In *Goldberg*, the Second Circuit rejected a defendant municipality's argument that the legislative privilege of Connecticut legislators requires municipal immunity from liability under § 1983 stemming from municipal legislation. *Id.* at 74–75. To support its argument, the municipality contended that at any trial it would be prevented from calling its own legislators to testify about the alleged retaliatory purpose and motive behind their legislation. *Id.* at 74. The court found that that contention was based "on a collection of largely outdated cases," and recognized that "[d]evelopments in federal law over the last 30 years have tied the constitutionality of many types of municipal legislation directly to the purpose and motive of the legislators." *Id.* at 74–75. Thus, citing several Supreme Court cases since 1971, the *Goldberg* court concluded that "[t]he demands of constitutional litigation have therefore overridden any earlier notions as to the presumed motive or purpose of legislation." *Id.* at 75. Although *Goldberg* recognizes that evidence of legislative motive or purpose may be the subject of judicial inquiry in an action challenging local legislation, this Court does not construe *Goldberg* to abrogate a legislator's legislative privilege.

Accordingly, this Court finds that no compelling justification has been shown for requiring Legislator Binder to answer questions within his legislative privilege. To the extent the Magistrate Judge's rulings rejected Legislator Binder's assertion of legislative privilege and directed him to answer questions concerning his deliberations and thought processes regarding the Resolution those rulings are contrary to law and must be set aside.

■ Upon review of the questions objected to by Legislator Binder enumerated above, this Court finds that questions 1, 2 and 5, and question 4, to the extent it asks Legislative Binder for his role in obtaining certain information, seek matter subject to Legislator Binder's legislative privilege and, accordingly, answers may not be compelled. As for questions 3 and 6, and the balance of question 4, Legislator Binder is directed to answer these questions only to the extent

**3.** Significantly, Plaintiffs themselves noted at the deposition that there are written transcripts of the Committee's meetings, and Plaintiffs do not suggest that there are no other sources from which they may obtain evidence of legislative purpose or motive.

they can be answered without disclosing privileged matter. This Court notes that Legislator Binder's communicative activities, including his acquisition of information for the purpose of his legislative activities, fall within his legislative privilege.

Based on the sensitive nature of the issue raised, and the apparent good faith assertion of legislative privilege, this Court finds that the circumstances do not warrant holding Legislator Binder in contempt. Accordingly, Plaintiffs' motion to hold Legislator Binder in contempt is denied.

Any challenges to the assertion of legislative privilege that may arise in the continued deposition of Legislator Binder should be addressed to Magistrate Judge Lindsay, who is now assigned to this matter.

## CONCLUSION

For the reasons above, Plaintiffs' motion to hold Legislator Binder in contempt is denied, and Legislator Binder's cross-motion to set aside the Magistrate Judge's rulings is granted in part and denied in part.

SO ORDERED.