Miles v. New Shoreham                    CV-95-356-JM  02/14/96 P

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Miles-Un-Ltd., Inc., Aldos
Mopeds, Inc., Finnimore & Fisher,
Inc., Ocean State Bikes, Inc. and
M & J Transportation, Inc. and
The Moped Man, Inc.

                                        NH Civil No. 95-356-JM
          v.                            RI Civil No. 95-CV-326B
                                        RI Civil No. 95-456-ML
Town of New Shoreham, RI, Mary Jane
Balser, Edward F. McGovern, Jr.,
Kimberly Gaffett, Anthony Edwards,
Martha Ball, Everett Littlefield,
Douglas H. Michel and Susan Shea


**O R D E R**

     This constitutional attack on the New Shoreham moped
ordinance is before the court on Plaintiffs' Motion to Compel
Deposition Testimony of Town Council Members and Defendants'
Opposition.  For the reasons set forth below, the motion is
granted in part and denied in part.


BACKGROUND

     The Town of New Shoreham is a municipal corporation located
on Block Island, an island of approximately ten square miles
situated some twelve miles off the mainland coast of Rhode
Island.  Block Island has a year-round population of roughly 800
inhabitants.  However, the island's population increases in the

summertime in light of the fact that it is a popular vacation destination.

In October, 1994, the Town Council of New Shoreham held a public hearing regarding a proposed amendment to a then existing ordinance. The then existing ordinance, called "Motorized Cycle Rental", prohibited commercial moped rentals to the public without a town license, limited the number of licenses available, and limited the number of mopeds each licensee could rent to fifty (50). New Shoreham Code of Ordinances, Article V, Section 8-87. The proposed amendment sought the reduction of the number of mopeds each licensee could rent from fifty to forty during the 1995 season. Further, the proposed amendment reduced the number of rentable mopeds from forty to thirty for the 1996 and subsequent seasons. The Town of New Shoreham's authority to enact the proposed amendment was based upon Rhode Island General Laws § 31-19.3-5, which states in relevant part:

> The Town Council of the Town of New Shoreham may enact reasonable ordinances establishing procedures and standards for the licensing, supervision, regulation and control of the rental of motorized bicycles and motorized tricycles. An ordinance enacted pursuant to this section may:
>
> *        *        *
> (d) establish a maximum number of motorized bicycles and or motorized tricycles which a license holder may rent or lease under said license.

According to defendants, the need for the amendment was

2

supported by graphic and compelling evidence.  This evidence, which was presented during the course of the public hearing, related the dangers to public health and safety caused by operation of mopeds on the island.  Also presented at the hearings was evidence pertaining to the degree to which moped accidents overburden the island's limited medical resources.  At the conclusion of the public hearing, the Town Council for New Shoreham voted to adopt the proposed amendment.  The amended ordinance took effect on October 24, 1994.

Following the enactment of the amended ordinance, the plaintiffs filed an action seeking injunctive relief, compensatory and punitive damages, and a declaratory judgment declaring Ordinance 8-87, as amended, void as violative of constitutional rights and Rhode Island law.  Plaintiffs particularly allege that the enactment of the amended ordinance (1) constitutes an unlawful taking without just compensation in violation of the Fifth and Fourteenth Amendments of the United States Constitution; (2) violates the Commerce Clause of the United States Constitution; (3) violates Equal Protection and Due Process rights afforded by the United States Constitution; and (4) intentionally interferes with contractual relations.

Plaintiffs, on December 22, 1995, served Deposition Notices on defendants, noticing the deposition of Town Council members.

3

Upon receipt of these notices, counsel for defendants notified plaintiffs' counsel that he intended to instruct the deponents (Town Council members) not to answer questions regarding the "legislative process and their subjective/objective thoughts."

On January 12, 1996, plaintiffs filed a motion to compel the deposition testimony of the Town Council members. As support for the motion, plaintiffs allege that the Town Council members enjoy no testimonial privilege under the Speech or Debate Clause of the United States Constitution, the Speech in Debate Clause of the Rhode Island Constitution, or under the common law doctrine of legislative immunity.

On January 29, 1996, defendants submitted a Memorandum of Points and Authorities in Support of Motion for Protective Order to prohibit the depositions. On January 31, 1996, plaintiffs submitted a Supplemental Memorandum of Law in Support of Their Motion to Compel Deposition Testimony.

Now for the court's consideration is the issue of whether the plaintiffs are entitled to depose the Town Council members.

DISCUSSION

The immunity issues presented by the parties required a review of their background and bases.

The United States Constitution, in pertinent part, provides

4

at Article I, Section 6, that "Senators and Representatives . . .
shall . . . for any Speech or Debate in either House . . . not be
questioned in any other Place."  As noted by one commentator,

> The speech or debate clause protects Congress from two kinds
> of threats to its deliberative autonomy.  First, it blocks
> attempts by executive officials to use grand jury
> investigations and criminal prosecutions as means of calling
> into question `the legislative acts of . . . members of
> Congress.'  Second, and more generally, the clause insures
> `that legislators are not distracted from or hindered in the
> performance of their legislative tasks by being called into
> court to defend their actions.'

L. Tribe, American Constitutional Law § 5-18, p. 370 (2d ed.
1988)(footnotes omitted).

From its roots, the Speech or Debate Clause attempts to
guard legislative independence within a governmental setting
based on the separation of powers.  Rotunda & Nowak, Treatise on
Constitutional Law: Substance and Procedure § 8.6 (2d ed. 1992).
In essence, the Clause affords members of Congress "absolute
immunity which shields them from any sort of attack based on
their `legislative acts' - that is, acts which are `an integral
part of the deliberative and communicative process by which
Members participate in committee and House proceedings with
respect to the consideration and passage or rejection of proposed
legislation or with respect to other matters which the
Constitution places within the jurisdiction of either House.'"
Barcelo v. Agosto, 876 F. Supp. 1332, 1339 (D.P.R. 1995)(quoting

<u>Gravel v. U.S.</u>, 408 U.S. 606, 625, 92 S. Ct. 2614, 2627, 33 L.Ed.2d 583, <u>reh'g denied</u>, 409 U.S. 902, 93 S. Ct. 98, 34 L.Ed.2d 165 (1972)). Conversely, "the Clause provides no protection for activities which are essentially `political in nature' because the clause `does not prohibit inquiry into activities that are casually or incidentally related to legislative affairs but not a part of the legislative process itself.'" <u>Barcelo</u>, 876 F. Supp. at 1339 (quoting <u>U.S. v. Brewster</u>, 408 U.S. 501, 528, 92 S. Ct. 2531, 2545, 33 L.Ed.2d 507 (1972)).

In evaluating whether a certain action is protected, a court is obligated to determine "whether the activity is essential to the legislature's deliberations or whether permitting inquiry into the activity would threaten its integrity and independence." <u>Barcelo</u>, 876 F. Supp. at 1339; <u>see also Barcelo v. Agosto</u>, No. 95-1235 (1st Cir. January 31, 1996). After all, guarding the "integrity and independence" of our legislature is a motivating factor behind the Speech and Debate Clause Immunity, an immunity which protects against "possible prosecution by an unfriendly executive and conviction by a hostile judiciary." <u>U.S. v. Johnson</u>, 383 U.S. 169, 179, 86 S. Ct. 749, 754, 15 L.Ed.2d 681 (1966).

By its own terms the Speech or Debate Clause applies only to federal legislators. <u>See Lake Country Estates, Inc. v. Tahoe</u>

6

Regional Planning Agency, 440 U.S. 391, 404, 99 S. Ct. 1171, 1178, 59 L.Ed.2d 401 (1979). The Speech or Debate Clause, however, does have a bearing on the issue currently under consideration.

The Supreme Court has held that an immunity, substantially similar to that encompassed in the Speech or Debate Clause, is recognized under federal common law. Tenney v. Brandhove, 341 U.S. 367, 376, 71 S. Ct. 783, 95 L.Ed. 1019 (1951). This federal common law immunity protects state legislators acting within "the sphere of legitimate legislative activity." Id. In Tenney, the Court concluded that the common law legislative immunity, which developed from the English parliamentary struggles of the sixteenth and seventeenth centuries not to mention American colonial history, is imperative for state legislators "`in order to enable and encourage a representative of the public to discharge his public trust with firmness and success . . . .'" Id. at 373, 71 S. Ct. at 786 (quoting II Works of James Wilson (Andrews ed. 1896) 38). Invariably, the Court in Tenney, "embraced absolute legislative immunity because it helps guarantee that legislators are free to legislate, unfettered by fear of constituents' lawsuits." Acevedo-Cordero v. Cordero-Santiago, 958 F.2d 20, 22 (1st Cir. 1992). Thus, although the immunity under the Speech or Debate Clause is separate and

7

distinct from the federal common law immunity, "[w]hen the Justices initially recognized state legislative immunity as a component of federal common law, they turned to the Speech or Debate Clause for guidance anent the contours of the doctrine." National Ass'n of Social Workers v. Harwood, 69 F.3d 622, 629 (1st Cir. 1995)(citing Tenney, 341 U.S. at 376-79, 71 S. Ct. at 788-90)). Eventually, "the [Supreme] Court acknowledged that the immunities enjoyed by federal and state legislators are essentially coterminous." Harwood, 69 F.3d at 629 (citing Supreme Court of Virginia v. Consumers Union of the U.S., Inc., 446 U.S. 719, 732-33, 100 S. Ct. 1967, 1974-75, 64 L.Ed.2d 641 (1980)).

From a general standpoint, immunity for legislative acts attaches to state legislators, see, Tenney, 341 U.S at 367; Harwood, 69 F.3d at 631, regional public officials, see, Lake Country, 440 U.S. at 391, and local or municipal officers, see Acevedo-Cordero, 958 F.2d at 22-23. In recognizing a legislative immunity at the local level, the First Circuit recognized no "material distinction between a local legislator and a regional legislator with regard to a need for immunity." Id. Importantly, "`the nature of municipal government may make the need to quell a legislator's fear of personal retribution particularly [and equally] compelling.'" Id. at 23 (quoting

8

Gorman Towers, Inc. v. Bogoslavsky, 626 F.2d 607, 611-14 (8th Cir. 1980)). Without a doubt "`[b]ecause municipal legislators are closer to their constituents than either their state or federal counterparts, they are, perhaps, the most vulnerable to and least able to defend lawsuits caused by the passage of legislation.'" Acevedo-Cordero, 958 F.2d at 23 (citing Ligon v. State of Md., 448 F. Supp. 935, 947 (D.Md. 1977)).

As a tangential but relevant aside, decisions issued by the Rhode Island Supreme Court indicate that the scope and analysis of legislative immunity afforded under the Constitution of Rhode Island is virtually identical to the scope and analysis pertaining to the federal common law legislative immunity. Holmes v. Farmer, 475 A.2d 976 (R.I., Apr. 10, 1984); Marra v. O'Leary, 652 A.2d 974 (R.I., Jan. 25, 1995)("Inquiry by the court into actions or motivations of the legislators in proposing, passing, or voting upon a particular piece of legislation * * * falls clearly within the most basic elements of legislative privilege." (citation omitted).).

Unlike the doctrine of qualified immunity, which only provides a bar to liability for damages where the immune actor can show the reasonableness of his action, the "doctrine of absolute immunity provides a complete bar to civil liability for damages . . . ." Acevedo-Cordero, 958 F.2d at 22. Absolute

9

immunity enables legislators to be free, not only from "the consequences of litigation's results but also from the burden of defending themselves." Dombrowski v. Eastland, 387 U.S. 82, 85, 87 S. Ct. 1425, 1427, 18 L.Ed.2d 577 (1967). As specifically noted by a variety of jurisdictions, "[l]egislative immunity not only protects state [and local] legislators from civil liability, it also functions as an evidentiary and testimonial privilege." Marylanders for Fair Representation, Inc. v. Schaefer, 144 F.R.D. 292, 297 (D.Md. 1992); see also 2BD Associates Ltd. Partnership v. County Com'rs for Queen Anne's County, 896 F. Supp. 528, 531 (D.Md. 1995)("the effect of the doctrine is twofold; it protects legislators from civil liability, and it also functions as an evidentiary and testimonial privilege."); Suhre v. Board of Com'rs, 894 F. Supp. 927, 931 (D.N.C. 1995)("The purpose of this immunity is not just to shield from liability but also from the burden of defending suits.").

The rationale for affording state, regional, and local legislators a testimonial privilege is as compelling as the rationale for providing immunity from civil liability. Effectuating the intentions of the legislative immunity doctrine, legislators acting within the realm of legitimate legislative activity, should not be required to be a party to a civil action concerning legislative activities, nor should they be required to

10

testify regarding those actions. <u>Marylanders for Fair Representation</u>, 144 F.R.D. at 292; <u>see</u> <u>also</u> <u>Schlitz v. Com. of Va.</u>, 854 F.2d 43, 46 (4th Cir. 1988)("[t]he purpose of the doctrine is to prevent legislators from having to testify regarding matters of legislative conduct, whether or not they are testifying to defend themselves"). As is certainly true in the context of the Speech or Debate Clause, the common law legislative immunity likewise may be said to "protect the integrity of the legislative process by insuring the independence of individual legislators." <u>Brewster</u>, 408 U.S. at 507.

"Under current legal theory, [legislative] immunity attaches or does not attach depending on what kind of action was performed rather than on who performed the action." <u>Acevedo-Cordero</u>, 958 F.2d at 23; <u>see</u> <u>also</u> <u>Barcelo</u>, No. 95-1235, slip op. at 14-15 (1st Cir. January 31, 1996). In <u>Cutting v. Muzzey</u>, 724 F.2d 259 (1st Cir. 1984), the First Circuit explored the differences between proceedings legislative in character, which are protected by absolute immunity, and actions that are administrative in nature, which are not protected. The Court, in <u>Cutting</u>, set forth an analysis by which to make this determination.

> The first test focuses on the nature of the facts used to reach the given decision. If the underlying facts on which the decision is based are `legislative facts', such as `generalizations concerning a policy or state of affairs,' then the decision is legislative. If the facts used in the decisionmaking are more specific, such as those that relate

11

to particular individuals or situations, then the decision is administrative. The second test focuses on the `particularity of the impact of the state of action'. If the action involves establishment of a general policy, it is legislative; if the action `single[s] out specifiable individuals and affect[s] them differently from others', it is administrative.

Id. at 261 (citing Developments in the Law - Zoning, 91 Harv.L.Rev. 1427, 1510-11 (1978)).

Boiling the Cutting standard down to its essence, "[i]t is the function of the government official that determines whether or not he is entitled to legislative immunity, not his title." Marylanders for Fair Representation, 144 F.R.D. at 298. This approach entails a consideration of the "nature of the functions with which a particular official or class of officials has been lawfully entrusted" as well as "the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." Forrester v. White, 484 U.S. 219, 224, 108 S. Ct. 538, 542, 98 L.Ed.2d 555 (1988); see also Lake Country Estates, supra, 440 U.S. at 405 n. 30, 99 S. Ct. at 1179 n. 30. Consequently, of greater importance than an examination of the particular governmental branch, to which an official is assigned, is the official's role in a specific governmental activity and whether "the absence of immunity would have a `chilling effect' upon the official's performance of his duties." Marylanders for Fair Representation, 144 F.R.D. at 299.

12

The end result of this "functional" approach is that "an official with title of legislator does not receive absolute immunity for actions that are administrative in nature, and conversely, an official whose title is that of an executive [may] receive absolute immunity for actions which are legislative in nature." 2BD Associates, 896 F. Supp. at 532.

In determining function, "[a] local governmental body acts in a legislative capacity when it engages in the process of `adopt[ing] prospective, legislative-type rules.'" Id. (quoting Scott v. Greenville County, 716 F.2d 1409, 1423 (4th Cir. 1983)); see also Front Royal and Warren County Indus. Park Corp. v. Town of Front Royal, Va., 865 F.2d 77, 79 (4th Cir. 1989). However, if the particular regulation singles out specific individuals and influences them differently from others, the action will be deemed administrative. Trevino By and Through Cruz v. Gates, 17 F.3d 1189, 1191 (9th Cir. 1994)("[N]ot all governmental acts by . . . a local legislature . . . are necessarily legislative in nature."); Crymes v. DeKalb County, Ga., 923 F.2d 1482, 1485 (11th Cir. 1991)("[A]lthough a local legislator may vote on an issue, that alone does not necessarily determine that he or she was acting in a legislative capacity." Cinevision Corp. v. City of Burbank, 745 F.2d 560, 580 (9th Cir. 1984), cert. denied, 471 U.S. 1054, 105 S. Ct. 2115, 85 L.Ed.2d 480 (1985)).

13

Some examples of actions which have been judged administrative in nature are: (1) actions of a town planning board imposing certain conditions upon the development of a particular subdivision, Stone's Auto Mart, Inc. v. City of St. Paul, Minn., 721 F. Supp. 206, 210 (D.Minn. 1989); (2) a city council's denial of a petition to rezone a parcel of land, id.; (3) actions by county council members withholding a builder's permit, Scott, 716 F.2d at 1423; (4) refusal to approve a plan of development or attempts to hinder construction of a project, Fralin & Waldron, Inc. v. Henrico County, Va., 474 F. Supp. 1315, 1320-21 (E.D.Va. 1979); (5) actions directed at a specific developer, see Cutting, 724 F.2d at 261; (6) a discussion on whether new positions for specific individuals could be funded, Vacca v. Barletta, 933 F.2d 31, 33 (1st Cir. 1991); and (7) a legislator's decision to discharge an individual, Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27-28 (1st Cir. 1994).

Aside from the consideration of whether an action should be considered legislative or administrative, courts have noted critical differences between the principles underlying the constitutional immunity and the common law immunity, thereby warranting a more limited application in the protections afforded the latter. "For example, the [Supreme] Court has held that the

14

separation of powers concerns which underlie constitutional immunity - and which are not an aspect of the common law immunity - dictate that federal lawmakers enjoy a broader privilege than their state counterparts . . . ." Barcelo, 876 F. Supp. at 1340 (citing U.S. v. Gillock, 445 U.S. 360, 100 S. Ct. 1185, 63 L.Ed.2d 454 (1980)). Thus, in the federal common law legislative immunity context, "absolute immunity does not extend to even traditionally legislative actions of officials taken . . . in bad faith, because of corruption, or primarily in furtherance of personal instead of public interests." Haskell v. Washington Tp., 864 F.2d 1266, 1278 (6th Cir. 1988); 2BD Associates, 896 F. Supp. at 533 n. 5; Bruce v. Riddle, 631 F.2d 272, 276-77 n. 2 (4th Cir. 1980). Notably, in those circumstances where the immunity is challenged on bad faith, corruption, or personal interests grounds, a court should consider whether there is a chain of events or objective evidence from the outset supporting invidious intent behind the legislative action. Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 267-68, 97 S. Ct. 555, 504-65, 50 L.Ed.2d 450 (1977); Orange v. County of Suffolk, 855 F. Supp. 620, 623 (E.D.N.Y. 1994).

Mere speculation into the improper motives behind the regulation will not suffice to overcome the immunity. City of

15

Las Vegas v. Foley, 747 F.2d 1294, 1297 (9th Cir. 1984)("statute will not be invalidated on the basis of an `alleged illicit legislative motive,' U.S. v. O'Brien, 391 U.S. [367,] 383, 88 S. Ct. [1673,] 1682, [20 L.Ed.2d 672 (1968)]"); Soon Hing v. Crowley, 113 U.S. 703, 710-11, 5 S. Ct. 730, 734-35, 28 L.Ed. 1145 (1885)("The diverse character of such motives, and the impossibility of penetrating into the hearts of men and ascertaining the truth, precludes . . . such inquiries as impracticable and futile."); Tenney, 341 U.S. at 377 ("The privilege would be of little value if [legislators] could be subjected to . . . the hazard of a judgment against them based upon a jury's speculation as to motives.").  Rather, what must be considered is whether infringement of the immunity rises to a level of public need, i.e. whether disclosure is required in order to fully develop the relevant facts.  Orange, 855 F. Supp. at 624.  Moreover, the objective evidentiary approach is consistent with the principle that, generally speaking, the motivation of local legislators in passing regulations is protected from disclosure.  Searingtown Corp. v. Incorporated Village of North Hills, 575 F. Supp. 1295, 1299 (E.D.N.Y. 1981); Schlitz, 854 F.2d at 45 (if an inquest into legislative motive would command the testifying of legislators, pertaining to their conduct in a legislative capacity, the doctrine of legislative

16

immunity has omnipotent weight).

Although the doctrine of legislative immunity does apply in the personal testimony realm, the immunity does not extend to certain types of documentation requests. Corporacion Insular de Seguros v. Garcia, 709 F. Supp. 288, 297 (D.P.R. 1989). Accordingly, a defendant will be required to produce, at the request of a plaintiff, any documents that were prepared by a committee during the course of its deliberations. Marylanders for Fair Representation, 144 F.R.D. at 302 n. 20; Corporacion Insular de Seguros, 709 F. Supp. at 297 ("documents created by legislative activity can, if not protected by any other privilege, be disclosed and used in a legal dispute that does not directly involve those who wrote the document, i.e., the legislator or his aides"). Similarly, immunity does not attach if there has been a waiver. Such a waiver must be explicit, however. 2BD Associates, 896 F. Supp. at 535. Finally, discovery aimed at the enforcement of a regulation, or pertaining to acts unrelated to the formulation or passage of the regulation, are not barred from discovery under the immunity. 2BD Associates, 896 F. Supp. at 534.

Turning to the case at hand, the plaintiffs have indicated that they "are entitled to inquire into the legislative process surrounding the enactment of the moped reduction ordinance and

17

the `subjective/objective thoughts' of the Town counselors (sic) who enacted it."  Plaintiffs' Memorandum of Law in Support of Their Opposition to Defendants' Motion for Protective Order and in Support of Their Motion to Compel Deposition Testimony at page 5.  However, as noted previously in this Order, a plaintiff challenging the implementation of a regulation will not be entitled to discover the subjective motives of a legislator. This restrictive policy is particularly warranted where there is no evidence tending to suggest that the impetus behind an ordinance involves bias, corruption or prejudice or that the process leading to implementation of the regulation infringed on an "overriding, free-standing public policy."  Marylanders for Fair Representation, 144 F.R.D. at 304.

The Town Council for New Shoreham is, without question, vested with the ability and authority to institute and pass regulations and ordinances.  The Supreme Court of Rhode Island has repeatedly held that the state enabling act empowers a town to establish various regulations in accord with its police power. R.I. Home Builders v. Budlong Rose Co., 77 R.I. 147, 74 A.2d 237 (1950); Adams v. Zoning Board of Review of Providence, 86 R.I. 396, 135 A.2d 357 (1957); Town & Country Mobile Homes, Inc. v. Zoning Board of Review of City of Pawtucket, 91 R.I. 464, 165 A.2d 510 (1960); Lumb v. Zoning Board of Review of Town of

18

*Bristol*, 91 R.I. 498, 165 A.2d 504 (1960).  The Rhode Island Supreme Court has also held that when city council members undertake to institute a regulation pursuant to its delegated police powers, the members are performing legislative functions. *R.I. Home Builders*, 77 R.I. at 147, 74 A.2d at 237;  *see* *also* *Town & Country Mobile Homes, Inc.*, 91 R.I. at 464, 165 A.2d at 510 ("The enactment of a zoning ordinance or amendment thereto is a legislative act.").

With regard to the institution and passage of the moped regulation at issue, the record is replete with indications that the Town Council's determinations and conclusions were in furtherance of its police power.  Specifically, the record indicates that the primary basis behind the regulation restricting mopeds was the town's concern over the disparate number of accidents caused by or involving mopeds.  The need for the moped regulation was heavily explored and discussed during a public hearing held on October 17, 1994.  During the course of this hearing, evidence was presented demonstrating that from 1983 through 1995, there were 804 moped accidents resulting in 918 injuries.  Further, a Captain of the local rescue organization testified that "for the past decade, treatment of moped related injuries has been the single largest burden on the Block Island Rescue Squad."  The Captain also remarked that in 1994, moped

19

calls accounted for 48 percent of the summer daytime calls for the rescue organization. The Captain finally indicated that during the summer of 1994 "the mopeds had an accident rate of 36.25 per 100 mopeds on the road."

Within the course of the public hearing, two doctors also offered testimony pertaining to the health and safety reasons behind the proposed amendment. Dr. Peter Brassard, the island's physician, addressed in detail the types and severity of accidents or injuries stemming from moped use on the island. Another physician, Dr. Barbara DeBuone, director of the Rhode Island Department of Health, indicated in a letter that even the institution of mandatory helmets and eye protection, and a 25 mile-per-hour speed limit have failed to prevent moped accidents.

To restate, the record in this case suggests that at the core of the amended ordinance was the concern pertaining to the continued dangers to public health and safety generated by the operation of mopeds on Block Island.

The effect on plaintiffs, following the passage of the amended ordinance, may be said to be merely an incidental burden deriving from the town's legitimate exercise of its police power. Notably, however, plaintiffs have failed to offer any indications suggesting that the town's decision was based on factors other than generalizations concerning a policy or state of affairs.

20

Plaintiffs have also stated that depositions are necessary in order to flush-out, from defendants, the issue of whether the enactment and enforcement of the moped reduction ordinance is nothing more that the continuation of a consistent custom, policy, practice and usage of the town to restrict, ban or make commercially impractical the rental of mopeds on Block Island. The plaintiffs contend the First Circuit has expressly allowed, irrespective of legislative immunity, an inquiry into this type of information. Acevedo-Cordero, 958 F.2d at 21-23.

Plaintiffs misconstrue the reasoning noted by the First Circuit. At issue in Acevedo-Cordero was the question of whether the actions taken by the Municipal Assembly of Ponce were legislative or administrative in nature. Id. at 23. Specifically, the particular action involved the elimination of approximately 600 positions in civil service. Id. at 21. The First Circuit noted that the actions of the Assembly could not, on their face, be characterized as legislative or administrative. Id. at 23. Thus, the case was remanded for this determination. Id. at 24.

The pertinent factual background in the case at bar is easily contrasted with those presented in Acevedo-Cordero. Fundamentally, without rehashing the prior discussion, the actions of the New Shoreham Town Council pertain to an exercise

21

of police power.  Consequently, the actions surrounding the enactment of the moped regulation are precisely those that may be characterized as being within the legislative sphere.  <u>Orange</u>, 855 F. Supp. at 624.

Unlike in <u>Acevedo-Cordero</u>, where the question arose as to whether the Assembly acted outside the legislative sphere, the situation here is one in which plaintiffs are attempting to pierce a Town Council action which is, in and of itself, legislative in nature.  This, the plaintiffs will be precluded from doing.  <u>See</u> <u>id.</u> (the motivation of a local legislator in furtherance of a legislative duty is precisely the kind of activity protected by legislative immunity).  All things considered, subscribing to plaintiffs' argument would defeat the ultimate purpose behind the legislative immunity doctrine.  Plaintiffs' rationale would require any legislator to explain his actions, even if purely legislative, merely upon an unfounded allegation of improper motive.

Recognizing the authority vested in the Town Council, the drafting of the ordinance at issue is properly characterized as "legislative" in function, in that it involved discretion or "line-drawing" and entailed the adoption of prospective, legislative-type rules.  This being the case, the motives, roles and responsibilities assumed by the New Shoreham Town Council

22

members, in consideration and passage of the ordinance pertaining to mopeds, was substantially legislative and therefore is protected from disclosure by legislative immunity. See Burkhart Advertising, Inc. v. City of Auburn, Ind., 786 F. Supp. 721, 735 (N.D.Ind. 1991). To the extent the plaintiffs seek to depose the Town Council members concerning their motives behind implementation of the ordinance, the request is denied.

Nevertheless, the plaintiffs have also indicated that they are entitled to depose the defendants with regard to actions that are administrative in nature. As noted previously, the law is well-established that legislative immunity does not apply "when local zoning officials do more than adopt prospective, legislative-type rules and take the next step into the areas of enforcement." 2BD Associates, 896 F. Supp. at 534. Therefore, to the extent plaintiffs seek to depose the Town Council members relative to administrative issues, i.e. enforcement, application of the ordinance, and other acts unrelated to the drafting and passage of the ordinance, the plaintiffs are entitled to do so.

CONCLUSION

Applying the rationale of legislative immunity cases within the First Circuit, as well as from other jurisdictions, to legislative testimonial privilege, this court finds that there is

no basis for allowing the plaintiffs to depose the New Shoreham Town Councilors for the purpose of determining or inquiring into the individual motives behind the enactment of the ordinance at issue. The doctrine of legislative immunity bars the plaintiffs from inquiring about specific legislative actions taken and the reasons behind such actions. Aside from this condition, however, plaintiffs are entitled to depose the Town Councilors regarding actions that are administrative in nature. Finally, to the degree plaintiffs seek actual records or documentation pertaining to the ordinance at issue, they are so entitled. Corporacion Insular de Seguros, 709 F. Supp. at 297.

For the reasons set forth above, plaintiffs' motion to compel deposition testimony is granted in part and denied in part.

**SO ORDERED.**

 

_____
James R. Muirhead
United States Magistrate Judge

Date:    February 14, 1996

cc:     Robert B. Mann, Esq.
        Mark J. Hagopian, Esq.
        Marc DeSisto, Esq.
        Merlyn P. O'Keefe, Esq.
        Raymond F. Burghardt, Clerk, US District Court - RI
        Amato A. DeLuca, Esq.