*909 OPINION OF THE COURT
Leland DeGrasse, J.
Defendants seek review of a decision of Judicial Hearing Officer (JHO) Albert Blinder dated December 28, 1998, in which he found that plaintiffs could ask certain questions of nonparty deponent Ruth Henahan (Henahan) concerning her contacts with State legislators and officials of the executive branch regarding computer models for State funding of public schools. In so holding, JHO Blinder rejected defendants’ assertions that the questions would elicit information protected by the “Speech or Debate” Clause of the State Constitution (NY Const, art III, § 11) or by common-law legislative immunity.
FACTS
Plaintiffs challenge the adequacy of State funding for public schools in New York City.
At her deposition Henahan testified that she began working for the State Education Department (SED) in 1976 and that her principal responsibility was to create computer software, called the “State aid modeling system”, to enable SED to evaluate the distributional impact on school districts of changes to the State’s public school funding formulae. By the time she left SED in 1997, the State aid modeling system included thousands of variables that the State has devised as part of approximately 47 State aid formulae and categorical grant programs that it uses to fund public schools in New York State. Henahan has been retained by defendants as an expert witness in this action.
The State aid modeling system is used by staff from SED, the Division of the Budget (DOB) and members and staff of both houses of the Legislature. In order to manipulate data using the State aid modeling system, personnel from SED, DOB and the Legislature fill out a form entitled “Confidential State Aid Data Form” in which they indicate the changes to the formula or formulae they wish to test. The Confidential State Aid Data Form includes a section entitled “goals” that lists several factors, including “Increase of ($AMT)” and “% increase for NYC”. No other school district is listed on the form. Apparently the State aid modeling system software is also provided to individual legislators who want to conduct analyses themselves.
At her deposition, where Henahan was represented by an Assistant Attorney-General, Henahan testified that she would *910 act on requests from the Division of the Budget and from the Legislature and provide the requested information. At several points during her deposition, plaintiffs’ counsel posed questions concerning the identity of executive or legislative staff with whom Henahan met, the number of contacts she had with such staff, and the nature of her contacts with such staff. Plaintiffs’ counsel also asked questions concerning the documents that Henahan provided to executive and legislative personnel. Her counsel asserted a “legislative privilege” with respect to the information sought by such questions on the ground that Henahan’s contacts with both executive and legislative personnel concerned the drafting of budget legislation. Henahan refused to answer these questions.
During the course of colloquy between counsel, plaintiffs’ counsel set forth the questions he wished to ask: “I would like to ask Ms. Henahan questions about the contact she has had with members of the executive department prior to the release of the Executive Budget. I would like to ask questions about frequency, frequency of contact, the focus of the contact, types of assistance that she’s offered, how these types of assistance relate! ] to her tasks and responsibilities. I would like to ask questions about the documents she used to prepare for the meetings, the documents reviewed at the meetings and the documents that were produced as a result of the meetings. I would like to get a better understanding of the computer runs that she generates as part of that process.” Plaintiffs’ counsel also indicated that he wished to pursue similar lines of questioning with respect to Henahan’s contacts with personnel from the State Legislature.
The State brought a motion for a protective order before JHO Blinder, which he denied. He held that his ruling was without prejudice to defendants’ assertion of the privilege at the continuation of Henahan’s deposition concerning further questions beyond those already posed.
DISCUSSION
Defendants assert that Henahan’s contacts with legislators are protected from disclosure by the “Speech or Debate Clause” of the New York State Constitution. (NY Const, art III, § 11.) Defendants appear to assert at various points in their motion papers that this privilege applies equally to Henahan’s contacts with executive branch officials. However, by its terms the Speech or Debate Clause applies only to “members” of the Legislature, and, by judicial gloss, to the staff that assist them. *911 Defendants also assert a similar, common-law, “legislative privilege” that arguably covers Henahan’s contacts with executive branch officials. Courts have determined the applicability of this common-law privilege by using a “functional” approach and so have applied it to “legislative” activities of State officials who are employed by a nonlegislative branch of government.
A. Henahan’s Contacts with Legislators or Legislative Staff
The Speech or Debate Clause of the New York Constitution provides that “[f]or any speech or debate in either house of the legislature, the members shall not be questioned in any other place.” (NY Const, art III, § 11.) The Court of Appeals has held that this Clause provides “at least as much protection as the immunity granted by the comparable provision of the Federal Constitution”. (People v Ohrenstein, 77 NY2d 38, 53.) Accordingly, cases interpreting the Federal Speech or Debate Clause constitute persuasive authority.
The fundamental purpose of the Speech or Debate Clause is to ensure that legislators perform their duties independently, without fear of lawsuits or interference from the coordinate branches of government. (Eastland v United States Servicemen’s Fund, 421 US 491, 503; Matter of Straniere v Silver, 218 AD2d 80, 83, affd 89 NY2d 825.) The United States Supreme Court has interpreted the Federal Speech or Debate Clause broadly to effectuate its purpose, holding that any legislative activities by legislators or their staff are beyond judicial scrutiny. (See, Gravel v United States, 408 US 606, 616.) Legislative activities include those acts that are: “an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.” (Supra, at 625.) The Clause permits legislators or their agents to “conduct investigations and obtain information without interference from the courts, at least when these activities are performed in a procedurally regular fashion.” (Brown & Williamson Tobacco Corp. v Williams, 62 F3d 408, 416; see, United States v Swindall, 971 F2d 1531, 1545, cert denied 510 US 1040; Matter of Urbach v Farrell, 229 AD2d 275, appeal dismissed 90 NY2d 888.)
It is difficult to imagine a more “integral” legislative function than the formulation of budgetary legislation. To the *912 extent that Henahan assisted legislators or their staff in determining the State’s allocation of funds to public schools the work she did for them is privileged and may not be sought through discovery.
Plaintiffs attempt to avoid the Speech or Debate Clause by arguing that Henahan worked for SED, an independent State agency, and not for any particular legislator or legislative committee. This argument fails. It is the nature of the work in question performed by a State employee — not the employee’s title — that determines whether the Speech or Debate Clause obtains. Plaintiffs also argue that the privilege must be asserted by a legislator. To the extent that Henahan’s testimony would reveal a legislator’s thought processes or the iterative process of creating legislation, she may assert the testimonial privilege created by the Speech or Debate Clause on legislators’ behalf. (See, Doe v McMillan, 412 US 306, 312; Gravel v United States, supra, 408 US, at 616.) Courts have recognized that dissemination of information concerning a legislator’s involvement with particular pieces of legislation could potentially chill the legislator’s activities. (See, United States v Swindall, supra, 971 F2d, at 1545.)
Additionally, documents or data that Henahan produced at the behest of legislators are also protected by the Speech or Debate Clause as such documents could reveal the various policy options considered by individual legislators. In Brown & Williamson (supra, at 420) the court noted that “[djocumentary evidence can certainly be as revealing as oral communications — even if only indirectly when, as here, the documents in question * * * do not detail specific congressional actions. But indications as to what Congress is looking at provide clues as to what Congress is doing, or might be about to do”.
While plaintiffs are prohibited by the Speech or Debate Clause from questioning Henahan about her contacts with legislators, they may question her concerning the State aid modeling system. The modeling system was apparently an important, if not crucial, tool used by the Legislature in determining public school funding allocation. Plaintiffs are entitled to know how the State aid modeling system worked and what it could show legislators. Henahan may also be questioned about any nonlegislative uses, if any, of the State aid modeling system. With respect to the Confidential State Aid Data Form, she may be asked questions concerning who drafted the form, and what each of the categories mean.
*913 B. Henahan’s Contacts With Executive Branch Officials
Henahan asserts that her contacts with executive branch officials are protected by common-law legislative immunity. This doctrine has been developed in Federal courts to protect State legislators, and other State officials engaged in legislative acts, and arises from the same “taproots” of legislative independence that gave rise to the Federal Speech or Debate Clause. (Tenney v Brandhove, 341 US 367, 372; see, Supreme Ct. v Consumers Union, 446 US 719, 732-733.) Like the protection afforded members of the House and Senate by the Speech or Debate Clause, legislative immunity provides State legislators and other State officials engaged in legislative activities with absolute immunity from suit and with a testimonial privilege for all legitimate legislative activities. (See, 2BD Assocs. Ltd. Partnership v County Commrs., 896 F Supp 528, 531.) The United States Supreme Court has applied a functional approach in determining whether a State or local official is engaged in legislative action and so is entitled to the privilege. (See, Forrester v White, 484 US 219, 223-224.)
In Bogan v Scott-Harris (523 US 44) the Supreme Court held that a Mayor, in preparing a budget proposal for submission to the city counsel, was engaged in legislative activity and so entitled to common-law legislative immunity. Accordingly, Bogan establishes that an executive’s preparation of a proposed budget is activity within the scope of legislative immunity.
An aide may assert the privilege on behalf of a State official acting in a legislative capacity. (See, Dombrowski v Eastland, 387 US 82, 85.) While this derivative immunity is described as “less absolute” than the official’s {supra), here plaintiffs have brought forth no reasons why Henahan’s activities on behalf of DOB officials, which would appear to be central to the deliberations concerning school funding, are entitled to less immunity than if the privilege were asserted by DOB.*
In weighing the extent of the privilege, some courts have found that certain documents generated during the course of legislative activity may be discoverable, at least to the extent that they are not protected by any other privilege. (See, Marylanders for Fair Representation v Schaefer, 144 FRD 292, 302, n 20; Corporación Insular de Seguros v Garcia, 709 F Supp 288, 297.) These cases rely on the premise that the privilege is primarily a “use” privilege that is designed to protect *914 legislators from being dragged into court. This interpretation of the privilege is too narrow. The privilege is also designed to provide State legislators and other State officials acting within the legislative sphere with “breathing room” to debate and decide oh policy and mold it into legislation. Discovery of background documents and data would defeat this purpose of the immunity.
Plaintiffs claim that defendants’ retention of Henahan as an expert witness in this case constitutes a waiver of the privilege. As plaintiffs have brought forth no facts tending to show actual waiver, and as Henahan’s duties as expert witness would not appear to require her to divulge contacts that she had with individual legislators or executive department officials, this claim fails. Plaintiffs also invoke specific rules of the Assembly and Senate pertaining to disclosure of “legislative documents” to argue that the Legislature has somehow waived the privilege. This argument also fails. First, plaintiffs have not shown that the relevant documents generated by Henahan constitute “legislative documents” within the meaning of the rules. Second, the common-law privilege belongs to individual legislators, and not the Legislature as a whole, so the cited rules cannot waive a legislator’s privilege with respect to documents that she considered during the course of drafting or evaluating legislation.
CONCLUSION
Defendants’ motion to review the order dated December 28, 1998 of JHO Blinder is granted and upon review defendants’ application for a protective order is granted to the following extent. Plaintiffs are barred from seeking disclosure concerning contacts between Ruth Henahan and legislative and executive officials and staff concerning the creation, consideration and enactment of legislation.

 In any event, in their reply papers defendants include an affidavit from an official of DOB in which he asserts the privilege.