OPINION OF THE COURT
Marcy S. Friedman, J.
In this action for a declaratory judgment, plaintiffs challenge *736 the New York City Board of Health’s 1999 amendment to New York City Health Code (24 RCNY) § 161.01, which established a list of prohibited wild animals that included ferrets.[1] Plaintiff Kaskel, proceeding pro se, moves for leave , to depose the members of the Board of Health and the Department of Health general counsel, and seeks to reserve the right to depose other city officials, including the Mayor. Plaintiff also seeks discovery of documents.
In support of his request for discovery, plaintiff contends that depositions are necessary “because plaintiffs claim a bad-faith motivation by defendants, who are government officials who have an unfair bias against pet ferrets as well as me personally.” (Kaskel affidavit 1.) Plaintiff further contends depositions are necessary “in order to examine whether the process by which such members arrived at their decision was tainted with bad information, or personal, political or other bad-faith motivations affecting their official duties.” (Kaskel affidavit if 2.)
In a letter to the court from plaintiff Kaskel, dated November 2, 2000, plaintiff specifies that he seeks to depose the four members of the Board of Health (the Commissioner, Neal Cohen, as well as Doctors Pamela Maraldo, Saul Farber and John Cordice), and plaintiff indicates that other future deponents may include various Health Department employees, four of whom plaintiff names, including Wilfredo Lopez, its general counsel. The letter further sets forth the intended scope of the depositions, as follows:
“Plaintiffs wish to question the board members *737 about their official function, the procedures and conduct of the board preceding a vote, their prior cumulative voting record, and what procedures were followed in prior votes and in the one in question, on what parts of the public record did they rely in making their decision and on what other information outside the public record did they rely, what their personal experiences were, if any, with ferrets, and what their relationship or interaction with this Plaintiff had been with regard to improper motivation.”
The letter also sets forth plaintiffs requests for discovery of documents, as follows:
“Plaintiffs also wish certain pertinent documents outside of the official record of the proposed Rule to ban pet ferrets which the Board approved in September 1999, including any items rejected from the public record, any documents soliciting opinions on the subject of pet ferrets, documents describing the internal procedures of the Board of Health or its members’ functions, and any documents relating to this Plaintiff other than my own letters and the responses I received.”
A party to an action is entitled to “full disclosure of all matter material and necessary” in the prosecution of the action. (CPLR 3101; see, Allen v Crowell-Collier Publ. Co., 21 NY2d 403 [1968].) Plaintiffs request for discovery must accordingly be evaluated in light of his claims in the action.
Plaintiffs challenge the amendment to the Health Code as arbitrary and capricious and without a rational basis, unconstitutional, and an unlawful exercise of legislative powers by an executive agency. It is well settled that “[a]n administrative agency’s exercise of its rule-making powers is accorded a high degree of judicial deference, especially when the agency acts in the area of its particular expertise [citations omitted]. Accordingly, the party seeking to nullify such a regulation has the heavy burden of showing that the regulation is unreasonable and unsupported by any evidence.” (Matter of Consolation Nursing Home v Commissioner of N. Y. State Dept. of Health, 85 NY2d 326, 331-332 [1995]; accord, Matter of Big Apple Food Vendors’ Assn. v Street Vendor Review Panel, 90 NY2d 402, 408 [1997].)
Under this standard, judicial review is thus confined to whether there was “any evidence” to support the agency’s rule. *738 Matters outside the record before the agency, including the motivations or thought processes of the agency’s members in approving the rule, are therefore beyond the scope of review.
Nor may plaintiff be afforded depositions of the members or employees of the Board of Health based on plaintiffs allegation that they acted in bad faith in that they were motivated either by personal animus to plaintiff, bias against pet ferrets, or political concerns as appointees of the Mayor. Plaintiffs inquiry into the motivations of the Board of Health members or employees involved in the adoption of the rule is prohibited by the legislative immunity privilege.
The Speech or Debate Clause of the New York Constitution provides that “[flor any speech or debate in either house of the legislature, the members shall not be questioned in any other place.” (NY Const, art III, § 11.) This provision has been construed as providing “at least as much protection as the immunity granted by the comparable provision of the Federal Constitution.” (People v Ohrenstein, 77 NY2d 38, 53 [1990].) The Speech or Debate Clause of the US Constitution has in turn been held to confer immunity on members of Congress for “legislative acts” — that is, acts “which are an integral part of the legislative process.” (Id., at 53-54.) It has further been explained that “[t]he fundamental purpose of the clause is to insure that the legislative function may be performed independently * * * The United States Supreme Court has interpreted the Federal Speech or Debate Clause broadly to effectuate its purposes, holding that any acts by members of Congress or their aides within the performance of their legislative functions are beyond judicial scrutiny * * * The clause not only shields legislators from the consequences of litigation, but also protects them from the burden of defending themselves in court [citations omitted].” (Matter of Straniere v Silver, 218 AD2d 80, 83 [3d Dept 1996], affd for reasons stated below 89 NY2d 825.)
The Speech or Debate Clause applies by its terms only to “members” of the Legislature. However, a similar common-law legislative privilege is applicable to government officials in the executive branch when engaged in legislative activities. (See, Campaign for Fiscal Equity v State of New York, 179 Misc 2d 907, 910-911 [Sup Ct, NY County 1999], affd 265 AD2d 277 [1st Dept 1999].)
Here, the New York City Charter grants the Board of Health broad authority to regulate matters concerning public health, including authority to amend any part of the Health Code. (NY City Charter § 558 [b].) Indeed, “the Board of Health has been *739 recognized by the Legislature as the sole legislative authority in the field of health regulation in the City of New York.” (Matter of Schulman v New York City Health & Hosps. Corp., 38 NY2d 234, 237, n 1 [1975].) The Board of Health’s adoption of a rule such as that at issue clearly qualifies as a “legislative act,” which implicates the legislative immunity privilege. In other jurisdictions, it has been held that a local governmental body acts in a legislative capacity when it adopts “prospective, legislative-type rules.” (See, Scott v Greenville County, 716 F2d 1409, 1423 [4th Cir 1983].) Thus, while no New York case appears to have considered the applicability of this common-law privilege to the adoption of legislative-type rules by an agency such as the Board of Health, this Court concludes that the privilege is applicable.
Courts in a number of jurisdictions have held that “ ‘legislative immunity not only protects state [and local] legislators from civil liability, it also functions as an evidentiary and testimonial privilege.’” (Miles-Un-Ltd., Inc. v Town of New Shoreham, 917 F Supp 91, 98 [D NH 1996], citing Marylanders for Fair Representation v Schaefer, 144 FRD 292, 297 [D Md 1992].) The privilege thus ordinarily precludes disclosure as to the legislators’ deliberations and motivations in passing a regulation. (See, People v Ohrenstein, supra, 77 NY2d, at 54 [“Legislative acts have been defined as those which are an integral part of the legislative process, and have been held to include votes and speeches on the floor of the House as well as the underlying motivations for these activities * * * The immunity also extends to committee meetings and hearings which do not occur on the floor of the House”]; Searingtown Corp. v Incorporated Vil. of N. Hills, 575 F Supp 1295, 1299 [ED NY 1981]; Miles-Un-Ltd., Inc. v Town of New Shoreham, supra, at 100.)
The applicability of the legislative immunity privilege may not be avoided based on plaintiffs unsupported allegations of bad faith or improper motives on the part of the Board of Health’s members or employees. “Mere speculation into the improper motives behind the regulation will not suffice to overcome the immunity.” (Miles-Un-Ltd., Inc. v Town of New Shoreham, supra, at 100.)
Nor may the privilege be avoided based on plaintiffs claim that he seeks not to inquire into the motives or thought processes of the members of the Board of Health but rather into “what their actual conduct was prior to making their decision” or “what they were doing to arrive at their thinking” *740 [emphasis in original]. (Kaskel affidavit ^ 38, 40.) Notwithstanding this characterization by plaintiff of the nature of the inquiry, plaintiff in fact seeks, as he elsewhere acknowledges (e.g., Kaskel affidavit 1-2), to inquire into the motivations. Moreover, to the extent that plaintiff seeks to distinguish between motivations and deliberative processes (or procedures followed or information considered in voting on a rule), inquiry into the latter is also prohibited by the legislative immunity privilege. (See, People v Ohrenstein, supra.)
In sum, plaintiff’s request for depositions must be denied, as plaintiff fails, in both the papers on this motion and the November 2, 2000 letter, to identify any area of inquiry that is not barred by the .legislative immunity privilege.
Plaintiff also seeks documents outside the official record which may have been considered and rejected by the Board of Health in connection with its adoption of the rule. This document request is likewise barred by the legislative immunity privilege. As noted in Campaign for Fiscal Equity v State of New York (supra, 179 Misc 2d, at 913-914), there is federal authority that “certain documents generated during the course of legislative activity may be discoverable,” and this authority relies on the premise that the privilege is primarily a “use” privilege designed to protect legislators from being “dragged into court.” The Campaign for Fiscal Equity court rejected this reasoning, based on its conclusion that the privilege “is also designed to provide State legislators and other State officials acting within the legislative sphere with ‘breathing room’ to debate and decide on policy and mold it into legislation. Discovery of background documents and data would defeat this purpose of the immunity.” (Id., at 914.) This Court concurs with the Supreme Court’s reasoning in Campaign for Fiscal Equity,[2] and concludes that plaintiff’s request for documents is barred by the legislative immunity privilege.
Plaintiff argues that this case involves good government concerns, and that this Court should not “impede the discovery of governmental wrong-doing.” Plaintiff’s tireless advocacy on behalf of humane issues about which he clearly deeply cares is commendable. However, his advocacy is subject to the well-settled principle that legislators, or government officials acting in a legislative capacity, must be free to debate policy and to formulate legislation, without being called into court to testify *741 as to their reasons for adopting the legislation, unless there is some objective evidence tending to show that the impetus for the legislation was illicit bias or prejudice. Here, as such objective evidence is lacking, and plaintiff relies solely on speculation that the members of the Board of Health acted from bias against him or against pet ferrets in enacting the regulation, the requested discovery may not be authorized.
Plaintiff’s motion for discovery is accordingly denied. Nothing in this order should be construed as addressing the merits of plaintiff’s claims in this action.

. The rule provides in pertinent part:
“§ 161.01 Wild animals prohibited.
“(a) No person shall sell or give to another person, possess, harbor or keep wild animals identified in subsection (b) of this section or in regulations promulgated by the Commissioner pursuant to subsection (e) of this section other than in:
“(1) A zoological park or aquarium * * * or
“(2) A laboratory * * * or
“(3) A circus or native wildlife rehabilitator * * * or
“(4) A place which has received the approval of the Department [of Health] to exhibit or use such animals * * *
“(b) For the purposes of this Code, wild animals are deemed to be any animals which are naturally inclined to do harm and capable of inflicting harm upon human beings and are hereby prohibited pursuant to subsection (a). Such animals shall include * * * (iii) any of the following animals * * *
“(4) All fur bearing mammals of the family Mustelidae, including, but not limited to, weasel, marten, mink, badger, ermine, skunk, otter, pole cat, zorille, wolverine, stoat and ferret.”

. The appeals court opinion which affirmed the Supreme Court (265 AD2d 277, supra) did not address the issue of the discoverability of documents.