KNIGHTS OF COLUMBUS,
et al., Plaintiffs,

v.

TOWN OF LEXINGTON,
et al., Defendants.

No. CIV. A. 00–12360NG.

United States District Court,
D. Massachusetts.

March 27, 2001.

Chester Darling, Boston, MA, for Plaintiffs.

Daryl J. Lapp, Palmer & Dodge, Boston, MA, for Defendants.

*MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTION FOR A PROTECTIVE ORDER*

DEIN, United States Magistrate Judge.

This matter came before the court on defendants' Motion for a Protective Order (Docket # 26) whereby the defendants are seeking an order precluding any discovery in this matter on the grounds that all relevant information has been produced in connection with plaintiffs' earlier motion for a preliminary injunction, and that the other information being sought exceeds the scope of permissible discovery. Plaintiffs are challenging regulations enacted on November 6, 2000 by the Board of Selectmen of the Town of Lexington which govern the use of the Battle Green at Lexington Common and prohibit the "[p]lacement on the Battle Green of any unattended structure." Plaintiffs contend that the regulations, which resulted in the denial of their request for a permit to display a créche (Nativity Scene), impermissibly restrict protected speech and religious exercise in violation of their First Amendment rights.

On November 21, 2000, plaintiffs moved for a preliminary injunction seeking an order that they be allowed to display the créche during the period December 3, 2000 to January 6, 2001. The parties submitted memoranda, affidavits and documents to the court, and oral argument was heard.

On December 6, 2000, the court (Gertner, J.) denied the motion and issued a Memorandum wherein the court concluded "that plaintiffs are unlikely to succeed on the merits of their Complaint." *Knights of Columbus v. Town of Lexington,* 124 F.Supp.2d 119, 122 (D.Mass.2000).

Plaintiffs filed an emergency motion for a preliminary injunction pending appeal, which was denied by the First Circuit Court of Appeals "essentially for the reasons set out by the district court at greater length in its December 6, 2000 memorandum." The Court further ruled that "the preferred posture in which to address the constitutional issues will be in an appeal from the grant or denial of permanent injunctive relief."

The parties are in agreement that the issue of permanent injunctive relief will be decided by way of cross motions for summary judgment. The issue before me is what discovery is permissible before such motions are filed. In addition to serving interrogatories and a document request, the plaintiffs are seeking to depose the five named defendant members of the Board of Selectmen of the Town of Lexington.

For the reasons detailed herein, defendants' motion is ALLOWED IN PART and DENIED IN PART. Specifically, the motion for a protective order is ALLOWED as to "Plaintiffs' Interrogatories to the Defendant Selectmen," except for Interrogatory No. 5, which is modified to exclude the language "or that the Selectmen would consider permitting to be erected on the Battle Green." The motion is further ALLOWED as to the Selectmen's depositions at this time. However, following plaintiffs' receipt of permitted discovery, plaintiffs may seek leave of court to take the depositions consistent with this decision in order to obtain discoverable information not otherwise provided.

The motion for a protective order is DENIED as to Plaintiffs' Requests for Production of Documents, and the parties are ordered to confer and try to reach agreement on the scope of specific requests consistent with this opinion. The court will hear argument on any specific objections to document requests on **Thursday, April 5, 2001, at 10:00 A.M.**

## A. *FIRST AMENDMENT ANALYSIS*

In connection with its ruling on the plaintiffs' motion for a preliminary injunction, the court defined the legal standards applicable to this First Amendment challenge to regulations. As the court ruled:

One of the most important questions to answer in cases challenging government regulation of speech is "whether the government has adopted a regulations of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). The Lexington regulations challenged here easily pass this test for three independent reasons: (1) the new regulations are content-neutral on their face; (2) they were not adopted due to disagreement with the message conveyed by the crèche (or by any other expressive display or activity); and (3) the Selectmen's interest in protecting the historic and aesthetic qualities of the Green is unrelated to the content of any unattended structure that might be displayed thereon.

*Knights of Columbus,* 124 F.Supp.2d at 122.

In concluding that the regulations were not adopted "due to disagreement with the message the crèche conveyed," the court relied on the minutes of the Board of Selectmen, while cautioning that random comments of individual selectmen, even if indicating an improper motive, would be

insufficient to invalidate the regulation. *Id.* at 123 and n. 7 (citing *United States v. O'Brien*, 391 U.S. 367, 384, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) and cases cited). In concluding that the regulations were enacted to preserve the sanctity of the Lexington Green, the court relied on the "language and legislative history of the challenged regulations" which "amply support the conclusion that the regulations serve primarily to protect the historic and aesthetic qualities of the Lexington Green." *Id.* at 124. The plaintiffs argue that they are entitled to explore these, and other, factual assertions through discovery.

## B. *PROOF OF MOTIVE AND INTENT*

■ At issue is what type of facts are available to the plaintiffs to challenge the expressed intent of the Board of Selectmen. As plaintiffs admitted at oral argument, it is well established that inquiry into each Selectman's personal motivation generally is not appropriate. Not only, as discussed *infra*, does the doctrine of legislative immunity preclude legislators from being subjected to examination about their personal motivation, but their individual and inner-most thoughts simply are not controlling on the issue of constitutionality of legislation. *See United States v. O'Brien*, 391 U.S. 367, 383–84, 88 S.Ct. 1673, 1682–83, 20 L.Ed.2d 672 (1968) ("Inquiries into congressional motives or purposes are a hazardous matter" and court will not rely on statements made by individual legislators since "[w]hat motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it …."). *See also Church of The Lukumi Babalu Aye,*

*Inc. v. City of Hialeah*, 508 U.S. 520, 558, 113 S.Ct. 2217, 2239, 124 L.Ed.2d 472 (1993) (Scalia, J., concurring) (subjective motivation of lawmakers irrelevant when conducting analysis under First Amendment, and "it is virtually impossible to determine the singular 'motive' of a collective legislative body …."). [1]

■ As a result, courts rely on "objective indicators of intent," including the "face of the statute, the effect of the statute, comparison to prior law, facts surrounding enactment, the stated purpose, and the record of proceedings." *City of Las Vegas v. Foley*, 747 F.2d 1294, 1297 (9th Cir.1984), *as quoted in Colacurcio v. City of Kent*, 163 F.3d 545, 552 (9th Cir. 1998), *cert. denied,* 529 U.S. 1053, 120 S.Ct. 1553, 146 L.Ed.2d 459 (2000). Put another way, "[r]elevant evidence includes, among other things, the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body." *Church of The Lukumi Babalu Aye, Inc.*, 508 U.S. at 540, 113 S.Ct. at 2230–31 (majority opinion). Again, however, such statements are relevant "only if they show objective manifestations of an illicit purpose, such as a departure from normal procedures or a sudden change in policy." *Colacurcio*, 163 F.3d at 552.

## C. *LEGISLATIVE IMMUNITY*

■ The next issue is from what sources can the plaintiff seek relevant information. As detailed below, the doctrine of legislative immunity precludes inquiry into the individual defendants' state of mind. Moreover, since one of the pur-

---

1. There are no allegations of bad faith, corruption or personal interests which might require further inquiry in limited circumstances. *See Miles–Un–Ltd., Inc. v. Town of New Shoreham*, 917 F.Supp. 91, 99 (D.N.H. 1996), and authorities cited.

poses of the doctrine is to safeguard legislators from being burdened with the demands of discovery, the objective facts which can be used to challenge regulations should, if at all possible, come from sources other than the testimony of legislators. Therefore, unless the plaintiffs can establish that they cannot get the factual information they need from other sources, they are hereby precluded from taking the depositions of any of the Selectmen.[2]

 Since the plaintiffs have argued that legislative immunity does not apply in this case, some analysis is warranted. "It is well established that federal, state, and regional legislators are entitled to absolute immunity from civil liability for their legislative acts." *Bogan v. Scott–Harris,* 523 U.S. 44, 46, 118 S.Ct. 966, 969, 140 L.Ed.2d 79 (1998). That immunity applies to local legislators as well, since "the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability." *Id.* at 52, 118 S.Ct. at 971–72, and authorities cited; *see also Acevedo–Garcia v. Vera–Monroig,* 204 F.3d 1, 8 (1st Cir.2000). In fact, since " 'municipal legislators are closer to their constituents than either their state or federal counterparts, they are, perhaps, the most vulnerable to and least able to defend lawsuits caused by the passage of legislation.' " *Acevedo–Cordero v. Cordero–Santiago,* 958 F.2d 20, 23 (1st Cir.1992), citations omitted.

 Legislative immunity functions as an evidentiary and testimonial privilege. *See Miles–Un–Ltd., Inc. v. Town of New*

*Shoreham, R.I.,* 917 F.Supp. 91, 98 (D.N.H.1996), and authorities cited. Such privileges are necessary to effectuate the purpose of immunity, i.e., that "legislators acting within the realm of legitimate legislative activity, should not be required to be a party to a civil action concerning legislative activities, nor should they be required to testify regarding their actions." *Id.*

 Based on the record before me, it seems clear that the individual members of the Board of Selectmen were engaged in legislative acts when they proposed, discussed and voted upon the regulations at issue, regardless of their personal motives in so doing. *See Scott–Harris,* 523 U.S. at 54–55, 118 S.Ct. at 973 ("Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it."). "An official's bad motivation or 'unworthy purpose,' does not affect the immunity privilege so long as the actions fall within the ambit of protected legislative activity." *Acevedo–Garcia,* 204 F.3d at 8.

Plaintiffs, relying on *Acevedo–Cordero,* 958 F.2d at 23, argue that the regulations "single out specific individuals and affects them differently from others," and therefore approving the regulations must be considered an administrative act for which there is no absolute immunity. This argument, however, was rejected by the United States Supreme Court in the more recent case of *Bogan v. Scott–Harris.* There, a jury found that an ordinance to eliminate Scott–Harris' employment had been motivated by her exercise of constitutionally protected speech. *See Scott–Harris,* 523

---

**2.** I recognize that in *Miles–Un–Ltd. Inc.,* 917 F.Supp. at 102 (as well as other cases), the court allowed the depositions of members of the Town Council as to administrative matters such as to the enforcement of the application, while precluding any questions about the drafting and passage of the ordinance in question. I find this process cumbersome and an inappropriate burden on the legislators where the factual information can be gathered in another way. *See Orange v. County of Suffolk,* 855 F.Supp. 620 (E.D.N.Y.1994) (exemplifying problems which arise when allegedly "non-privileged" facts sought from legislator in deposition).

U.S. at 47–48, 118 S.Ct. at 969. The First Circuit found that the defendant city officials had engaged in administrative rather than legislative conduct because they "relied on facts relating to a particular individual [respondent] in the decisionmaking calculus." *Id.* at 48, 118 S.Ct. at 970, citations omitted. The Supreme Court reversed, ruling that the Court of Appeals had "erroneously relied on petitioners' subjective intent in resolving the logically prior question of whether their acts were legislative." *Id.* at 54, 118 S.Ct. at 972–73. Voting on an ordinance is a "quintessentially legislative" action, and when "stripped of all considerations of intent and motive, petitioners' actions were legislative," the doctrine of immunity applies. *Id.* at 55, 118 S.Ct. at 973.

Similarly, in the instant case the ordinance, on its face, does not single out any specific constituency or event. The "ordinance reflected a discretionary policymaking decision" which bears "all the hallmarks of traditional legislation." *Id.* Thus, the Selectmen were engaging in a legislative act when they enacted the ordinance in issue.[3]

The plaintiffs further argue that they should be permitted to depose defendants Peter Enrich and Jeanne Krieger as they filed affidavits in connection with the preliminary injunction issue. I have reviewed the affidavits and find that they generally contain undisputed facts and/or serve as narratives to highlight information contained in attached documents.[4] I do not find that by filing the affidavits the defendants waived their legislative immunity.

## D. ORDER AS TO THE REQUESTED DISCOVERY

 By their motion, the defendants have sought leave to provide no additional discovery. Therefore, they have not suggested modifications to the existing discovery requests. While I have no reason to doubt that the defendants have provided what they believe to be all relevant documents in connection with the injunction hearing, having formal requests and responses promotes better agreement as to the actual record and helps to eliminate future discovery disputes. Therefore, the mere fact that information has been produced previously does not relieve the defendants of their obligations to respond to discovery.

With respect to the specific discovery at issue, it is hereby ORDERED as follows:

### Plaintiffs' Interrogatories to the Defendant Selectmen

 With the exception of Interrogatory No. 5, plaintiffs interrogatories seek an after-the-fact explanation of the defendants' thought processes in connection with the enactment of the regulations.[5] Such interrogatories do not seek objective facts in existence as of the time of the regulation, or even contemporaneous statements, but rather constitute an improper inquiry into the defendants' motives and

---

3. This ruling does not prevent the plaintiffs from presenting additional arguments and evidence on this point if they seek to take the depositions after they receive the discovery authorized below.

4. To the extent the affiants relied on documents not previously produced, the documents should be produced.

5. The interrogatories seek an after-the-fact explanation of the municipal interests involved and how the crèche was destructive of those interests (Nos.1–4), and the features of the Battle Green the Selectmen were attempting to preserve (Nos.6–7). However, interrogatories should not be used to enable the defendants to supply after-the-fact justification for their actions, which can then serve as a basis for additional inquiry by the plaintiffs.

intent. Consequently, defendants motion for a protective order is ALLOWED as to Interrogatory Nos. 1–4 and 6–7. Interrogatory No. 5 asks the defendants to identify all unattended structures that the Selectmen have already indicated they will permit to be erected on the Battle Green. This is an inquiry into objective facts relating to the enforcement of the regulation and is appropriate. Thus, the motion for a protective order is DENIED as to this part of Interrogatory No. 5.

The balance of Interrogatory No. 5, however, asks the Selectmen to identify all unattended structures they "would consider permitting to be erected on the Battle Green." This is an improper inquiry into the defendants' thought processes and shall be stricken.

### Plaintiffs' Requests for Production of Documents [6]

The motion for a protective order as to the document request is DENIED. Plaintiffs are entitled to obtain documents which relate to the relevant subjects of inquiry as described above. As written, however, many of the requests seem overly broad. Instead of having the court attempt to rewrite the requests in a void, it would be most efficient for the defendants to raise their objections, if any, to specific requests, and for the parties to attempt to resolve their differences as to specific requests, consistent with this decision.

I am cognizant of the time pressures in this case. Consequently, a further hearing on the appropriate scope of plaintiffs' request for documents is hereby scheduled for Thursday, April 5, 2001, at 10:00 A.M. The parties shall notify the court promptly if the hearing is not necessary or if additional time is needed.

### Depositions of Selectmen

The motion for a protective order as to the depositions of the Selectmen is ALLOWED. However, if, after their receipt of the permissible discovery ordered herein, the plaintiffs believe they need deposition(s) of Selectmen to establish objective facts, they shall file a motion seeking leave to take the deposition(s). The motion shall specify the reason the deposition is needed and the information being sought.

---

6. Nothing herein shall be deemed to prejudge the admissibility of any of the documents ordered to be produced.

