ABUZAHRA vs. CITY OF CAMBRIDGE, 101 Mass. App. Ct. 267

 
 SAID S. ABUZAHRA [Note 1] vs. CITY OF CAMBRIDGE.

101 Mass. App. Ct. 267
 December 10, 2021 - June 21, 2022

Court Below: Superior Court, Middlesex County
Present: Sacks, Ditkoff, & Walsh, JJ.

 

No. 21-P-225.

Appeals Court, Jurisdiction. Protective Order. Evidence, Privileged communication, Testimonial privilege. Privileged Communication. Practice Civil, Interlocutory appeal, Discovery. Electronic Mail. Eminent Domain. Constitutional Law, Taking of property. Due Process of Law, Taking of property. 

In the circumstances of a Superior Court judge's discovery order regarding the production of electronically stored information (e-mail) to ascertain whether the defendant city's taking of the plaintiff's property had been made in bad faith, this court, having determined that the doctrine of legislative privilege covered communications between city councillors regarding whether and why the plaintiff's property should be taken, concluded that it was unable, based on the briefing and the record, to resolve whether the e-mails in question fell within the privilege. [271-277]

Civil action commenced in the Superior Court Department on August 17, 2017.

 A motion for a protective order was heard by William M. White, J., and a motion for reconsideration was considered by him.

 M. Patrick Moore, Jr. (John S. Leonard also present) for the defendant.

 Page 268 

 John E. Bowen (John R. Maciolek also present) for the plaintiff.

 WALSH, J. In September of 2016, the city council for the city of Cambridge (city) voted to approve an order of taking of the plaintiff's property, located at 139 Bishop Allen Drive/1-15 Vail Court (property), by eminent domain. The stated purpose of the taking was to create affordable senior housing or transitional housing for city residents. The owner of the property, and the plaintiff in the present action, Said S. Abuzahra, filed suit against the city claiming that the taking was made in bad faith and in violation of his Federal and State constitutional rights.

 During the discovery phase of the lawsuit, a Superior Court judge issued an order regarding the production of electronically stored information, which resulted in over 36,000 e-mail files, consisting of e-mail messages and attachments (collectively, e-mail), being identified by the prescribed search terms. The city combed through one portion (just over 5,700 e-mails), and in its first production, turned over roughly 1,000 relevant e-mails to the plaintiff. The city withheld fifty-six e-mails claiming legislative privilege, and sought a protective order. [Note 2] The judge denied the city's motion for a protective order and the subsequent motion for reconsideration, later explaining that all but one of the e-mails concerned administrative acts such that legislative privilege did not apply. As to that one e-mail, dated September 24, 2016, the judge ruled that it was not discoverable under the open meeting law. The city has filed this interlocutory appeal, invoking the doctrine of present execution. The plaintiff cross-appeals from the judge's ruling that the September 24, 2016 e-mail regarding executive session minutes was protected from disclosure under the open meeting law pursuant to G. L. c. 30A, § 21 (a) (6).

 We conclude that we have jurisdiction over the city's appeal, that the eminent domain taking was legislative in nature, and that legislative privilege may apply at least to some communications involving the city council that concern the taking. We remand for further proceedings to determine which, if any, of the withheld 

 Page 269 

e-mails are within the privilege. We conclude that we lack jurisdiction over the plaintiff's cross appeal.

 Discussion. When a judge's ruling on a discovery motion is based upon a mixed question of fact and law, we review the ultimate ruling de novo. See Patel v. Martin, 481 Mass. 29, 39 (2018); Chambers v. Gold Medal Bakery, Inc., 464 Mass. 383, 389 (2013). We afford the judge's findings of fact the usual deference, unless based on purely documentary evidence. See Committee for Pub. Counsel Servs. v. Barnstable County Sheriff's Office, 488 Mass. 460, 473-474 (2021); Commonwealth v. Tremblay, 480 Mass. 645, 654-655 (2018). The issue before us is the extent to which legislative privilege attaches to the fifty-four contested e-mails. While the plaintiff acknowledges the principle of legislative privilege, he claims that the e-mails are discoverable because the communications did not concern legislative acts but rather administrative acts.

 1. Appellate jurisdiction. The city appeals from this interlocutory discovery order under the doctrine of present execution. Generally, "there is no right to appeal from an interlocutory order unless a statute or rule authorizes it." Maddocks v. Ricker, 403 Mass. 592, 597 (1988). A limited exception is found in the doctrine of present execution, which allows an immediate appeal "[1] where the interlocutory ruling will interfere with rights in a way that cannot be remedied on appeal from the final judgment, and [2] where the matter is collateral to the merits of the controversy" (quotations and citation omitted). Elles v. Zoning Bd. of Appeals of Quincy, 450 Mass. 671, 674 (2008).

 It is true that both our courts and courts in the Federal system have generally not allowed parties to appeal from interlocutory discovery orders under the doctrine of present execution or the comparable collateral order doctrine. See Patel, 481 Mass. at 34. Indeed, in Patel, the Supreme Judicial Court concluded that the doctrine of present execution did not allow an appeal from a discovery order that required the disclosure of assertedly attorney-client privileged materials in private litigation. Id. at 35-36. "Where a postjudgment appeal offers a viable, albeit imperfect, remedy, we will not grant a right to interlocutory appeal from a discovery order simply because it involves an issue of privilege." [Note 3] Id. at 36.

 Page 270 

 In this particular instance, however, there is more than a simple claim of attorney-client privilege at stake. If legislative privilege exists here, it reflects a determination about the proper allocation of governmental powers -- a recognition that courts should not interfere in the affairs of legislative bodies by requiring disclosure of certain communications at the center of the legislative process. If the documents at issue here were communications among members of the Legislature about proposed legislation, the order to disclose them would raise a significant question under the separation of powers provisions of art. 30 of the Massachusetts Declaration of Rights. Cf. K.J. v. Superintendent of Bridgewater State Hosp., 488 Mass. 362, 368 (2021) ("the essence of what cannot be tolerated under art. 30" is "interference by one department [of government] with the functions of another" [citation omitted]). The city council, although not the Legislature, is nevertheless an elected legislative body, serving important public functions, with which the courts ought not to interfere lightly. The larger impact of such interference on the proper functioning of government could be difficult to undo on appeal from a final judgment, even if particular communications erroneously ordered disclosed, and information derived from such communications, could be excluded from any subsequent proceedings. See note 3, supra.

 "In determining whether to allow an appeal under the doctrine, [an appellate court] must balance 'the harm to cost-effective litigation arising from piecemeal interlocutory appeals against the harm that a litigant may suffer from a trial court order that is irremediable on postjudgment appeal.'" CP 200 State, LLC v. CIEE, Inc., 488 Mass. 847, 849 (2022), quoting Patel, 481 Mass. at 37. "In applying this 'balancing act,' [an appellate court must also] consider[] whether the 'sheer volume of potential appeals' resulting if an immediate appeal is permitted, as well as the 'inevitable adverse impact on judicial efficiency, outweighs the intrinsic harm that potentially might be suffered by an aggrieved party who is denied an immediate right to appeal.'" CP 200 State, LLC, supra at 849-850, quoting Patel, supra. We think that the volume of interlocutory appeals raising issues of legislative 

 Page 271 

privilege is likely to be low and is outweighed by the intrinsic harm that might be suffered by legislative bodies, and the public they serve, if they were denied an immediate appeal. Therefore, in this limited and narrow circumstance, we conclude that the doctrine of present execution allows an immediate appeal by the city.

 The same does not hold true for the plaintiff's cross appeal regarding the September 24, 2016 e-mail that the judge found to be protected by an exemption from the open meeting law's disclosure requirements. The plaintiff's cross appeal fits squarely within the general rule that interlocutory orders are not immediately appealable because "a party ought not to have the power to interrupt the progress of the litigation by piecemeal appeals that cause delay and often waste judicial effort in deciding questions that will turn out to be unimportant" (quotation and citation omitted). CP 200 State, LLC, 488 Mass. at 848-849. If the plaintiff does not ultimately prevail in the trial court, he may appeal, and if he shows prejudicial error in the judge's decision not to order disclosure of that e-mail, the error may be fully remedied in further proceedings. [Note 4] We now turn to the merits of the city's claim.

 2. Legislative privilege. "Testimonial privileges are exceptions to the general duty imposed on all people to testify." Commonwealth v. Corsetti, 387 Mass. 1, 5 (1982). "Thus, the recognition of privileges contravenes the fundamental maxim that the public . . . has a right to every [person's] evidence" (quotation and citation omitted). Matter of the Enforcement of a Subpoena, 463 Mass. 162, 166 (2012). When an appellate court does recognize a testimonial privilege, a power that is exercised cautiously, the court does so because "excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." Id. at 167, quoting Three Juveniles v. Commonwealth, 390 Mass. 357, 359-360 (1983), 

 Page 272 

cert. denied, 465 U.S. 1068 (1984). See Babets v. Secretary of the Executive Office of Human Servs., 403 Mass. 230, 235 (1988) (Supreme Judicial Court has "been reluctant to create new privileges, preferring to leave this area to legislative determination"). [Note 5]

 The concept of a legislative privilege, however, is not new; although not recognized in any Massachusetts appellate decision, it has been widely recognized elsewhere, and both the judge in this case and the plaintiff at oral argument before us acknowledged its existence. Legislative privilege is a facet of legislative immunity, a doctrine providing "that legislators are absolutely immune from liability for their legislative activities." 6 Moore's Federal Practice § 26.52[11], at 26-424 (3d ed. 2022). In considering art. 21 of the Massachusetts Declaration of Rights, which protects "freedom of deliberation, speech and debate, in either house of the legislature," [Note 6] the Supreme Judicial Court recognized that legislative immunity is necessary to allow legislators "to execute the functions of their office without fear of prosecutions, civil or criminal." Coffin v. Coffin, 4 Mass. 1, 27 (1808). Article 21 reflects important principles later incorporated in the Federal Constitution's speech or debate clause, and the United States Supreme Court has looked to the Coffin decision in interpreting the Federal clause. See Tenney v. Brandhove, 341 U.S. 367, 373-374 (1951).

 In Bogan v. Scott-Harris, 523 U.S. 44, 52 (1998), the Supreme Court formally extended the doctrine of legislative immunity to local and regional Legislatures, and thus to the city council members whose actions are at issue here, recognizing that "[t]he rationales for according absolute immunity to federal, state, and regional legislators apply with equal force to local legislators," as "the exercise of legislative discretion should not be inhibited by 

 Page 273 

judicial interference or distorted by the fear of personal liability," no matter the "level of government." Although the particular question in Bogan was the existence of legislative immunity to a claim under 42 U.S.C. § 1983, the Court recognized that State common law played a critical role in answering that question. See id. at 49. "The common law at the time § 1983 was enacted deemed local legislators to be absolutely immune from suit for their legislative activities." Id. See id. at 49-50 (citing State court decisions and treatises on municipal law and torts).

 The Bogan Court also clarified the scope of the doctrine, reiterating that "[a]bsolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity" and adding that "[w]hether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it" (quotations and citations omitted). [Note 7] Bogan, 523 U.S. at 54. The Court concluded that the actions undertaken by officials in voting for an ordinance, introducing a budget, and signing an ordinance into law were legislative functions, as they were "integral steps in the legislative process" that, "in substance, bore all the hallmarks of traditional legislation." [Note 8] Id. at 55.

 The importance of legislative immunity is such that courts have protected it by recognizing a legislative evidentiary privilege. "Legislative privilege against compulsory evidentiary process exists to safeguard this legislative immunity and to further encourage the republican values it promotes." Equal Employment Opportunity Comm'n v. Washington Suburban Sanitary Comm'n, 631 F.3d 174, 181 (4th Cir. 2011) (EEOC). "As specifically noted by a variety of jurisdictions, legislative immunity not only protects state [and local] legislators from civil liability, it also functions 

 Page 274 

as an evidentiary and testimonial privilege" (quotation and citation omitted). Miles-Un-Ltd., Inc. v. New Shoreham, R.I., 917 F. Supp. 91, 98 (D.N.H. 1996). "Legislative privilege clearly falls within the category of accepted evidentiary privileges." EEOC, supra at 180.

 Here, to determine whether the city's action in taking the plaintiff's property was legislative (rather than administrative) in character, such that legislative privilege could apply, the judge looked to whether the decision affected specific individuals or the larger population. The judge applied a test adopted by several United States Courts of Appeals, under which, if the action affects the larger population, [Note 9] it is generally considered legislative, but if it affects a specific individual or a small group of individuals, it is considered administrative. See Alexander v. Holden, 66 F.3d 62, 65-67 (4th Cir. 1995); Smith v. Lomax, 45 F.3d 402, 405-406 (11th Cir. 1995); Acevedo-Cordero v. Cordero-Santiago, 958 F.2d 20, 23 (1st Cir. 1992). The judge concluded that the actions of the city in taking the property were related to a particular individual (the plaintiff) rather than the general public, such that the taking of the property was an administrative act. Therefore, the judge concluded, the e-mails must be produced since they were relevant to the plaintiff's claim of bad faith. [Note 10]

 Applying that test was erroneous in these circumstances, because, at least in this Commonwealth, the exercise of the power of eminent domain falls within the category of what the Court in Bogan termed "quintessentially legislative" actions. Bogan, 523 U.S. at 55. Article 10 of the Massachusetts Declaration of Rights confers the eminent domain power on the Legislature: "[N]o part of the property of any individual can, with justice, be taken from him, or applied to public uses, without his own consent, or that of the representative body of the people" (emphasis added). "The power of eminent domain is one of the highest attributes of 

 Page 275 

sovereignty [and] resides in the Legislature" (quotation and citation omitted). Lutheran Serv. Ass'n of New England, Inc. v. Metropolitan Dist. Comm'n, 397 Mass. 341, 345 (1986). The power may "be exercised by the Legislature itself or it may be delegated by statute to the cities and towns." Burnham v. Mayor & Aldermen of Beverly, 309 Mass. 388, 389 (1941). A local governmental body's exercise of such delegated taking authority, "duly recorded, in conformity with the statute, is to be treated as if it were a statute." Boston v. Talbot, 206 Mass. 82, 90 (1910). A city council is vested with the authority to take properties by eminent domain, and its exercise of this power is discretionary, not ministerial in nature. See G. L. c. 40, § 14; G. L. c. 43, § 30. On this record, we see no basis to view the city council's exercise of eminent domain power as anything other than legislative in character and thus protected by legislative immunity and the associated legislative privilege.

 We are unable, however, based upon the briefing and the record, to definitively resolve the issue whether the specific e-mails fall within the privilege. Having determined that legislative privilege covers communications between city councillors regarding whether and why the plaintiff's property should be taken, [Note 11] the e-mails that the city withheld and that the judge ordered disclosed include many other types of communications, between persons other than councillors, the exact content of which is unclear.

 Specifically, the city's claims that the disputed communications here related to the property or the taking of the property and included (1) e-mails from a councillor's aide [Note 12] to city executive officials; [Note 13] (2) e-mails from a city executive official to councillors; (3) e-mails between a councillor or a councillor's aide and a constituent; and (4) "electronic meeting notices" sent between 

 Page 276 

unidentified "[c]ity staff" regarding "a potential meeting" between certain councillors, their aides, city executive officials, and in some instances, a representative of a private corporation. Whether legislative privilege protects such communications has not been fully briefed and requires reconsideration on remand. Cf. Hutchinson v. Proxmire, 443 U.S. 111, 121 n.10 (1979) ("Regardless of whether and to what extent the Speech or Debate Clause may protect calls to federal agencies seeking information, it does not protect attempts to influence the conduct of executive agencies"); Gravel v. United States, 408 U.S. 606, 625 (1972); United States v. Brewster, 408 U.S. 501, 512-513 (1972) (speech or debate clause does not protect various constituent service activities and communications with constituents). [Note 14] Although it is unclear from the record, it does not appear that the judge performed an in camera examination of the e-mails for which the privilege was claimed. See United States v. Rayburn House Office Bldg., Room 2113, Washington, D.C. 20515, 497 F.3d 654, 658 (D.C. Cir. 2007), cert. denied, 552 U.S. 1295 (2008) (Rayburn House Office Bldg.) (noting court's prior remand to trial court to "review in camera any specific documents or records identified as legislative and make findings regarding whether the specific documents or records are legislative in nature"); Association for Reduction of Violence v. Hall, 734 F.2d 63, 6768 (1st Cir. 1984). On remand, such a review may be necessary.

 Further, courts disagree on the extent to which legislative privilege protects against the disclosure of documents, as distinguished from depositions of legislators or interrogatories aimed at determining their motives and mental processes. Decisions recognizing some privilege for documents include Rayburn House Office Bldg., 497 F.3d at 655, 660; Favors v. Cuomo, 285 F.R.D. 187, 209 (E.D.N.Y. 2012); and New York State Ass'n of Realtors, Inc. v. Shaffer, 135 F.R.D. 78, 79-80 (S.D.N.Y. 1991). Decisions suggesting the contrary include Miles-Un-Ltd., 917 F. Supp. at 

 Page 277 

100, and cases cited. [Note 15] "[T]here is a split in the Circuits concerning whether or not the Speech or Debate Clause affords protection from the disclosure of protected materials." United States v. Collins, 409 F. Supp. 3d 228, 247 (S.D.N.Y. 2019). Again, the parties here have not sufficiently briefed this question to enable us to decide it.

 A blanket denial of privilege, without considering the context of the city's communications and without considering the nature of and parties to the actual communications in question, renders it impossible to discern which of the communications are discoverable. While we express no view as to how the discovery motion should ultimately be decided, the judge's order cannot stand, as it was based upon a misapprehension that legislative privilege could not apply to communications regarding an eminent domain taking.

 Conclusion. On the city's appeal, that portion of the order denying in part the city's motion for a protective order is vacated, and the matter is remanded for further proceedings consistent with this opinion. The plaintiff's appeal from the portion of the order allowing in part the city's motion is dismissed.

So ordered.

FOOTNOTES
[Note 1] Individually and as trustee of the Equity Realty Trust. 

[Note 2] For purposes of the motion for a protective order, the city created ten categories of communications in chronological order and organized the e-mails to fit within these groupings. In doing so, the city realized that one particular e-mail, dated March 10, 2011, could not be considered protected since it was forwarded to a noncity official. The city provided this e-mail to the plaintiff. Thus, the fifty-six contested e-mails have been reduced to fifty-four since the judge found that one of the e-mails was protected under the open meeting law. 

[Note 3] The court explained that, in a case where material required to be disclosed in discovery was determined in a postjudgment appeal to have been privileged, the harm could largely, if not entirely, be eliminated: "the consequences of an adverse discovery order can be ascertained, the prejudice identified, and the error remedied by barring the use of any evidence derived from the protected communications at a new trial or other subsequent proceeding." Patel, 481 Mass. at 35. 

[Note 4] A present execution appeal of one aspect of an order does not necessarily bring all other aspects of the same or related orders before the appellate court. See, e.g., Shapiro v. Worcester, 464 Mass. 261, 265 (2013); Borman v. Borman, 378 Mass. 775, 780-782 (1979); Chiulli v. Liberty Mut. Ins., Inc., 87 Mass. App. Ct. 229, 232-233 (2015); Baker v. Hobson, 62 Mass. App. Ct. 659, 663 (2004), abrogated on other grounds by Benoit v. Frederickson, 454 Mass. 148, 151 (2009). Contrary to the plaintiff's suggestion, the language in our appellate rules that authorizes a cross appeal does not create appellate jurisdiction over a cross appeal challenging an otherwise unappealable order. See Mass. R. A. P. 4 (a) (1), as appearing in 481 Mass. 1606 (2019). 

[Note 5] We note that insofar as legislative privilege at the local level is rooted in State common law, the Legislature is free to alter it, through statutes such as the open meeting law and the public records law, which further governmental transparency and other important values. Since this issue has not been raised or briefed by the parties, we express no opinion on the extent to which the Legislature may have done so, leaving the issue open to being raised by the parties on remand. Similarly, we express no view on the extent to which other interests embodied in the State Constitution and laws might limit the privilege at the local level. 

[Note 6] Article 21 provides in full: "The freedom of deliberation, speech and debate, in either house of the legislature, is so essential to the rights of the people, that it cannot be the foundation of any accusation or prosecution, action or complaint, in any other court or place whatsoever." 

[Note 7] It is worth noting that the immunity of State and local legislators does not apply "where important federal interests are at stake, as in the enforcement of federal criminal statutes." United States v. Gillock, 445 U.S. 360, 372-373 (1980). 

[Note 8] The Court noted: 

"The ordinance reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents. Moreover, it involved the termination of a position, which, unlike the hiring or firing of a particular employee, may have prospective implications that reach well beyond the particular occupant of the office. And the city council, in eliminating [the Department of Health and Human Services], certainly governed 'in a field where legislators traditionally have power to act.'"

Bogan, 523 U.S. at 55-56.

[Note 9] Or if it affects a larger policy or "state of affairs." Acevedo-Cordero v. Cordero-Santiago, 958 F.2d 20, 23 (1st Cir. 1992). 

[Note 10] Relying upon Pheasant Ridge Assocs. Ltd. Partnership v. Burlington, 399 Mass. 771, 776 (1987) (Pheasant Ridge), the judge reasoned that a taking done in bad faith could be invalidated and that since the plaintiff alleged bad faith, the evidence he sought was relevant. He further observed that "[t]he fact that 'bad faith' is capable of rendering a taking invalid is yet more evidence that the taking here is not a legislative act; with legislative acts, the officials' motive or intent is irrelevant." We see nothing in Pheasant Ridge addressing whether a taking is legislative in character or whether discovery of communications by or between members of the body exercising taking authority is permissible. 

[Note 11] Of the initial fifty-six e-mails withheld, only one is solely between councillors, and the city states that it "concern[s] the need to speak with [the then city manager] about taking action related to the Property." 

[Note 12] Cf. Gravel v. United States, 408 U.S. 606, 616 (1972) (under Federal speech or debate clause, "a [legislator] and his aide are to be 'treated as one'" [citation omitted]). 

[Note 13] By "executive officials" we mean officials such as the city clerk and deputy clerk, the manager of planning and operations in the executive office of the city, the city manager, an assistant city manager, and others. We cannot determine on this record whether their communications here were made in the performance of a legislative function. Cf. Bogan, 523 U.S. at 55 ("officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions"). 

[Note 14] See Almonte v. Long Beach, 478 F.3d 100, 107 (2d Cir. 2007) (meetings with persons outside Legislature "to discuss issues that bear on potential legislation" are within scope of legislative immunity); United States v. Collins, 409 F. Supp. 3d 228, 246 (S.D.N.Y. 2019), citing Eastland v. United States Servicemen's Fund, 421 U.S. 491, 504 (1975) ("[t]he protections of the Speech or Debate Clause extend to Congressional information-gathering activities"). Our citation of these and other lower Federal court decisions is meant only to suggest issues that may arise in applying legislative privilege and not to imply that such decisions necessarily control legislative privilege as it may be recognized in the Commonwealth. 

[Note 15] In Knights of Columbus v. Lexington, 138 F. Supp. 2d 136 (D. Mass. 2001), town selectmen facing discovery requests sought a protective order on legislative privilege grounds. The court granted the order as to interrogatories regarding the enactment of regulations but denied it as to an interrogatory regarding the enforcement of those regulations; the court also denied the order as to document requests "which relate to the relevant subjects of inquiry as described above." Id. at 141-142. From the context, it is unclear whether the permitted document requests in Knights of Columbus went beyond the issue of enforcement. See Miles-Un-Ltd., 917 F. Supp. at 102 (barring depositions regarding town council members' legislative action in adopting ordinance but permitting depositions regarding their administrative action in enforcing it). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.